**SOUTHERN S. S. CO. v. NORTON, Deputy Compensation Commissioner, et al.**

**No. 1408.**

District Court, E. D. Pennsylvania.

Sept. 17, 1941.

Geo. F. Blewett, of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., and J. Barton Rettew, Jr., Asst. U. S. Atty., both of Philadelphia, Pa., for defendant Norton.

E. Herman Fuiman, of Philadelphia, Pa., for defendant Moultrie.

KALODNER, District Judge.

Plaintiff filed his bill for the purpose of reviewing and setting aside an order for the payment of compensation made by Deputy Commissioner Norton, under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., upon the ground that the order was not in accordance with the law. The bill prays that interlocutory and permanent injunctions be granted, restraining the Deputy Commissioner from enforcing the award of compensation or from imposing any penalty upon the plaintiff for not complying with the provisions of the award, and directing the Deputy Commissioner to set aside his findings of fact and to make an order disallowing the claim.

It was to this bill of complaint that the motion to dismiss was filed.

The plaintiff in the bill is the employer. The defendants named are the Deputy Commissioner and the employee.

Moultrie, the defendant-employee, was injured on August 24, 1939, in the course of his employment, when he was struck on the left side of his face over the eye by a cargo net. He was at that time engaged in supervising the discharge of cargo from the tween decks on the "SS San Antonio".

At the hearings before the Deputy Commissioner, the report of Dr. Kelly, who examined the employee at the instance of the Deputy Commissioner, was introduced in evidence. The report disclosed that the visual form field in the left eye was contracted uniformly about one-fourth. The report went on to say (N.T. p. 11): "In my opinion, there is a partially dislocated lens in this eye. This condition with a slight haziness of the media and with vitreous opacities is sufficient to account for the diminution in vision. In my opinion, this condition could have been caused by the above injury. Likewise, it was perfectly possible that this could have existed before the injury."

Dr. O'Brien, another impartial physician, rendered his report, in which it was stated that there was a dislocated lens in the left eye, and that "This man's condition may be due to the accident or it may have existed prior to this injury".

Moultrie himself testified that the left eye was normal and his vision was normal prior to the accident, but that he could not see so well out of the left eye after the accident.

Dr. Holland, for the employer, testified that while there was some physical injury to the eye due to the accident, the latter caused no impairment of sight. Dr. Colgan, also for the employer, testified much to the same effect. He said (N.T. p. 32): "There wasn't any loss of vision as related to the injury on August 24."

The Deputy Commissioner made a finding of fact to the effect, inter alia, that by March 7, 1940, a permanent disability had developed as a result of the injury suffered by the employee in the accident, and that the loss of vision attributed to the injury was equivalent to 25 per cent of such disability as the employee would have suffered if he had lost his left eye; and made an award in the amount of $816.55.

The bill of complaint followed.

The employer's position in the bill and in its brief is that the testimony adduced before the Deputy Commissioner is not sufficient to support the findings or award; more specifically, that because the medical testimony by the impartial examiner, Dr. Kelly, stated that the doctor found that the loss of vision could be attributable either to the accident or an old condition, which of the two, the doctor could not or did not say, therefore, no causal relation between the accident and the injury had been established by the testimony, and there was consequently no evidence to support the findings of fact or the award.

A narrow issue is thus presented: whether, in the absence of a direct statement by a physician (testifying either as an impartial witness or in behalf of the employee) that the injury or loss of vision

resulted from the accident, there was sufficient competent evidence to support a finding (not based on other medical testimony) by the Commissioner to the effect that the injury did result from the accident.

It must be remembered in this connection that the employee testified that his vision was impaired after the accident, although it had not been impaired prior thereto.

■ In my opinion the authorities in this circuit hold that the evidence adduced before the Deputy Commissioner supports the findings and the award.

In Di Giorgio Fruit Corporation v. Norton, 3 Cir., 93 F.2d 119, certiorari denied 302 U.S. 767, 58 S.Ct. 480, 82 L.Ed. 596 (questioned on other grounds in Kobilkin v. Pillsbury, 9 Cir., 103 F.2d 667, 669), a longshoreman suffered contusions and lacerations to the globe of his left eye when he was struck by the stalk of a bunch of bananas which fell upon him in the course of his employment. The court said (page 120 of 93 F.2d):

"In our opinion, the Deputy Commissioner had before him sufficient evidence to support his finding that the injury to Henson's eye was by its nature a progressive one and originally resulted from the accident which occurred upon July 25, 1932; that the globe of the eye with its lens proceeded through various progressive stages of degeneration culminating in lenticular opacities and a cataractous condition; and that Henson became aware of this condition in the month of August, 1936, when the injury became compensable. It is true that there is a conflict of evidence in respect to the nature and extent of his injuries. Henson stated that he had made no claim on account of his injury until he needed money. The medical testimony is far from clear. The physicians of the United States Public Health Service, who examined Henson, could not conclude definitely that the accident of July 25, 1932, was the cause of the cataractous condition of the eye as it existed in 1936, and that such condition should have been observable by Henson long prior to the time of the filing of his claim. One of the physicians stated, however, that the lenses of the injured eye might have been somewhat opaque following the accident and not have been observed by Henson; that it was a doubtful case.

"Under the act the merits of the facts of the case must be determined by the Commissioner. We do not have the power to revise or modify the findings of fact of the Deputy Commissioner if they are supported by the evidence and are neither arbitrary or capricious. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598; Green v. Crowell [5 Cir.], 69 F.(2d) 762, certiorari denied 293 U.S. 554, 55 S.Ct. 88, 79 L.Ed. 656; Rothschild & Co., Inc., v. Marshall (D.C.) 56 F.(2d) 415; Wheeling Corrugating Co. v. McManigal [4 Cir.] 41 F.(2d) 593; Hoage, Deputy Commissioner, et al. v. Employers' Liability Assurance Corp., 62 App.D.C. 77, 64 F.(2d) 715. In the case at bar, the Deputy Commissioner has weighed the evidence carefully and made his findings of fact. These findings are not capricious or arbitrary, but represent the mature judgment of an experienced officer. We will not disturb them."

The medical testimony was no stronger in the Di Giorgio case than in the case at bar. There, as here, no physician positively established a causal relation between the accident and the injury: nor was there any medical testimony even that the accident probably caused the injury. One physician said it was a doubtful case: the physicians in general could not conclude definitely that the accident was the cause of the cataractous condition. Obviously, the Deputy Commissioner in the Di Giorgio case reached his conclusions that the injury and the cataractous condition did result from the accident from other and nonmedical testimony in the case.

I reach the same conclusions in the instant case, to wit, that the absence of medical testimony definitely or positively establishing a causal relation between the accident and the loss of vision does not rob the findings and award of the Deputy Commissioner of validity, provided there is any other testimony to support them. That other testimony is furnished by the employee himself, including the testimony that his vision, good before the accident, was impaired thereafter.

■ It should be noted that the Deputy Commissioner is not bound to accept medical testimony: Joyce v. U. S. Deputy Commissioner, D. C., 33 F.2d 218, page 219, where it was said: "He [the Deputy Commissioner] had a right to ignore the opinion of the doctors and to rely on other evidence and his own observations and judgment."

In Independent Pier Co. et al. v. Norton, 3 Cir., 54 F.2d 734, the appellate court re-

fused to disturb the findings of the Deputy Commissioner in a case where the latter disregarded the testimony of doctors to the effect that the employee was able to return to work, and accepted instead the testimony of the employee, unsupported by medical testimony, that the employee was still unable to work, notwithstanding the fact, as mentioned by the circuit court of appeals, that the weight of evidence was against the employee.

The policy of the act with regard to review by the courts is enunciated by Crowell v. Benson, 285 U.S. 22, 46, 47, 52 S.Ct. 285, 291, 76 L.Ed. 598, where it was said:

"Apart from cases involving constitutional rights to be appropriately enforced by proceedings in court, there can be no doubt that the act contemplates that as to questions of fact, arising with respect to injuries to employees within the purview of the act, the findings of the deputy commissioner, supported by evidence and within the scope of his authority, shall be final. To hold otherwise would be to defeat the obvious purpose of the legislation to furnish a prompt, continuous, expert, and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task. The object is to secure within the prescribed limits of the employer's liability an immediate investigation and a sound practical judgment, and the efficacy of the plan depends upon the finality of the determinations of fact with respect to the circumstances, nature, extent, and consequences of the employee's injuries and the amount of compensation that should be awarded."

As to the conflict in the medical testimony between the impartial examiner and the physician testifying on behalf of the employer, the latter being to the effect that there was no diminution of vision, it is enough to say that the conflict revolved about a pure question of fact which, in the absence of caprice or arbitrariness, it was the province of the Deputy Commissioner, and not ours, to resolve.

As I stated in McCarthy Stevedoring Corp. et al. v. Norton et al., D.C. E.D.Pa., 40 F.Supp. 960, opinion filed March 8, 1940: "It is well settled that the Deputy Commissioner is not bound to accept the opinion or theory of any particular medical examiner, but may rely upon his own observation and judgment in conjunction with the evidence."

See, also, my opinion in Luckenbach Steamship Co., Inc. v. Norton et al., D.C. E.D.Pa., 41 F.Supp. 105, opinion filed July 16, 1940.

For the reasons stated, I consider that the findings and award of the Deputy Commissioner are supported by the evidence, are not capricious or arbitrary, and are in accord with the law. Consequently, the motion to dismiss should be and is hereby granted.