**LIBERTY MUT. INS. CO. et al. v. MAR-SHALL, Deputy Commissioner of United States Employees' Compensation Commission for Fourteenth District, et al.**

No. 851.

District Court, W. D. Washington, N. D.

Oct. 20, 1944.

Joseph J. Lanza and Eggerman, Rosling & Williams, all of Seattle, Wash., for libelant.

L. M. Koenigsberg and Koenigsberg & Sanford, of Seattle, Wash., for respondents.

J. Charles Dennis, U. S. Atty., Gerald D. Hile, Asst. U. S. Atty., and Herbert O'Hare, Asst. U. S. Atty., all of Seattle, Wash., for William A. Marshall, Deputy Commissioner.

BOWEN, District Judge.

On December 1, 1942, the claimant, John B. Piatt, while working at his desk in his office furnished by his employer, sustained a blow on his head by a falling light globe and light globe shade, weighing altogether about three and a half pounds.

The immediate results of that accident were that Mr. Piatt experienced dizziness immediately after receiving the blow, and sustained a laceration and puncture of the skin of the scalp.

He was conducted by two or more of his business associates to a first aid station where he received first aid and was sent home.

On the second day thereafter he returned to his office for the purpose of attending a conference, but had to leave the conference because of physical weakness and discomfort. Thereafter he was sent to a hospital where he received treatment for about twelve days.

After this first period of hospitalization he returned to his home and made daily visits to his office for the purpose of putting in some time on his business duties, but he usually did not put in a full day at his office and returned to his home earlier than the end of business hours each day. He thus partially attended to his business duties daily until about the 26th of February, 1943, when, while dressing in the early morning, he collapsed in the bathroom of his home with a paralytic stroke. He thereupon was re-hospitalized and continued in the hospital until about the 5th of May, 1943.

Off and on during most of the time from the day of his injury until the day of his discharge from the hospital and down to the time of the hearings before the Deputy Commissioner, Mr. Piatt complained of headaches and dizziness and of being unable to concentrate his mind efficiently on business tasks. These symptoms were likewise testified to by business associates of Mr. Piatt.

■ The Deputy Commissioner found that Mr. Piatt's present condition of total disability is the result of the accident which occurred on December 1, 1942. There is ample non-medical testimony in support of that finding. I do not take the view that there was no medical testimony tending to support the Deputy Commissioner's findings; on the contrary, I think there was some medical testimony in support of such findings. For example, Dr. Cloward's statement to Mrs. Piatt concerning the blood clot not dissolving as a reason for the doctor keeping Mr. Piatt in bed in a reclining position longer than the doctor had expected to do; and also Dr. Cloward's testimony that it could not be said posi-

178

tively whether the accident caused the paralysis or not, and that cerebral paralysis could develop quickly or gradually and progressively.

It is contended by claimant that his paralysis developed gradually and progressively after the accident. Libelants contend that the blow on the claimant's head had nothing to do with his cerebral thrombosis which caused his disability.

It seems to me, without attempting to make a detailed analysis at this time, that the evidence in this record amply supports the Deputy Commissioner's findings and award. In fact, I do not see how one reading this record could come to any conclusion as to the cause of Mr. Piatt's disability other than the one the Deputy Commissioner came to.

I am aware that three doctors gave it as their final opinion that the present disability, directly attributable to cerebral thrombosis, was not caused by this accident, but I have some considerable doubt whether or not either of these doctors had accurately in mind in expressing that opinion some of the vital facts underlying that opinion. While I realize these doctors have expressed conclusions different from those of the Deputy Commissioner, yet from the careful study that this record merits and which I have attempted to give it, I find myself not convinced by the medical opinions. On the other hand, I am, in view of the whole record including the non-medical testimony, convinced of the correctness of the Deputy Commissioner's findings and award.

I have taken the time necessary to carefully consider all of the authorities that Counsel have collected and exhaustively reviewed in their oral arguments before the Court. The great weight of Federal Court authority is to the effect that, even where all the medical testimony is all one way, the Deputy Commissioner is not bound by such medical testimony, if there is other competent testimony requiring a finding different from that indicated by the medical testimony.

Upon the authority of Southern S. S. Co. v. Norton, D.C., 41 F.Supp. 108, Ryan Stevedoring Co. v. Norton, D.C., 50 F. Supp. 221, Marra v. Norton, D.C., 56 F.2d 246, and McNeelly v. Sheppeard, 5 Cir., 89 F.2d 956, which in effect hold that the Deputy Commissioner is not required to follow the testimony of medical experts where there is other competent evidence to support the findings made by the Deputy Commissioner, it is the opinion and decision of the Court that the motion to dismiss the complaint should be granted and the Deputy Commissioner's findings and award should be confirmed.

Exception allowed libelants.