## BLOUNT v. WINDLEY.

1. When no rights of third parties interfere, the extent to which mutual obliga-
tions may be set off against each other, and the mode of doing it, are wholly
subject to legislative control.
2. A statute, therefore, as that of North Carolina, passed after the bank or its
commissioner had obtained a judgment, which authorizes the defendant
to set off against it the circulating notes of the bank which he procured
after the judgment, is, as between him and the bank or its commissioner,
valid, and does not impair the obligation of the contract sued on, or of the
judgment.
3. But if the rights of either creditors of the bank, or other parties interested
in the judgment, were such that they could exact payment of the judg-
ment in lawful money, the case would be different.

ERROR to the Supreme Court of the State of North Carolina.
The facts are stated in the opinion of the court.

*Mr. Joseph J. Davis* for the plaintiff in error.
*Mr. Samuel F. Phillips, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

Under a statute of North Carolina, passed March 12, 1866, to enable the banks of the State to close their business, the plaintiff in error was, by a decree of the proper State court, in the fall of that year, appointed commissioner of the Bank of Washington; and all the real and personal property and choses in action of the bank were by the decree vested in said commissioner for the benefit of those creditors of the bank who should prove their debts within twelve months. As such commissioner, Blount sued and recovered against the defendant in error a judgment on a note given to the bank for borrowed money, on which he was surety. This was in November, 1867. The defendant subsequently procured the circulating notes of the bank, and tendered them in payment of the judgment to plaintiff, who refused to accept them. He then deposited them with the clerk of the court in which the judgment was rendered, who received them, not in payment, but subject to the order of the court.

A motion for new trial in the original suit remained undecided until the spring term, 1872. At the next term of the court after this, the defendant, on due notice, moved the court to have these notes applied in payment of the judgment, and satisfaction of that judgment entered on the record; which motion was granted, and the order made. From this order plaintiff appealed to the Supreme Court of the State, which affirmed the judgment of the court below; and he thereupon sued out the present writ of error.

Two grounds are relied upon in this court to reverse that judgment: —

1. That plaintiff had a right, under the Constitution and laws of the United States, to have his judgment paid in coin or legal-tender notes, and nothing else.

2. That certain statutes of North Carolina under which the defendant was allowed to set off the notes of the bank in satisfaction of the judgment are void, because they impair the obligation of his contract.

We will consider the last ground first, because, if these statutes are valid and authorized the judgment of the court, then the other objection is also answered; for, if the defendant had the right to pay or set off these notes in satisfaction of the judgment, the plaintiff did not have the right to exact payment exclusively in legal-tender money of the United States.

The following acts and parts of acts are those relied on to justify the order of the court in this case.

Act of Aug. 22, 1868 : —

" The General Assembly of North Carolina do enact, that where any note or bond has been, or may hereafter be, given as a renewal of any debt or demand due or payable to any bank in this State, whose charter bears date prior to the twentieth day of May, 1861, the bills of said bank shall be a legal set-off to such note or bond, without regard to whether such note or bond be made payable to said bank or to some other party; and the bills of such bank may be offered, and shall be received, to sustain the plea of set-off to any suit brought upon such note or bond in any court of this State, whether such note or bond be made payable to such bank or to any other party." ·

Sects. 1 and 4 of an act approved March 17, 1869 : —

"SECT. 1. The General Assembly of North Carolina do enact, that an act entitled 'An Act to make bank-bills a set-off,' ratified the twenty-second day of August, A.D. 1868. be so amended as to apply to judgments and executions which may have been obtained on any debt due any of the banks mentioned in the aforesaid act."

" SECT. 4. The remedy under this act may be by plea of set-off, or by injunction, as the case may require."

· By a statute passed in December of the same year, it was made " the duty of every court in the State, upon proof that such bills have been delivered or tendered and refused in satisfaction of such judgments to the nominal amounts thereof, to cause an entry of satisfaction of such judgments to be entered of record in the court wherein the same were recovered."

The proposition of plaintiff in error is, that, when he recovered the judgment against the defendant, he had a right to exact and receive in payment of that judgment gold or silver coin, or

the legal-tender treasury notes of the United States, and that
defendant had no right to pay him in any thing else; that the
judgment was a contract, and the obligation of it is impaired
by the statute which authorizes payment in something else.
It is undoubtedly true, in some sense and for some purposes,
that a judgment has been treated and considered as a contract;
and we are not disposed to deny that the judgment in this
case is evidence of a contract.  But the judgment is only a
contract because it is evidence of a debt or obligation on the
part of defendant due to plaintiff.  The judgment itself presup-
poses, and is founded on, some antecedent obligation or con-
tract, and is only a higher evidence of that contract, because it
now has the sanction of the judicial determination of its validity
and amount by a court of law.  The essential nature and char-
acter of the contract remains unchanged; and, in deciding how
far it may be affected by legislation, we must look mainly to
the original contract.

It may be assumed that all debts not solvable by their terms
in something else are *prima facie* payable in legal-tender money,
as ascertained by the acts of Congress.  And this is true whether
the contract be express or implied, and whether it exist in parol,
or in a promissory note, or in a judgment.  Notwithstanding this
general rule, it is a principle of long standing in all systems of
jurisprudence that one debt or obligation may be set off or coun-
terbalanced against another, so that while the obligation of both
is recognized, both are satisfied in law and discharged without
the payment of any money on either; and this is done by the
courts without the consent of the party and against his will.
This doctrine of set-off in the English law originally could only
be called into operation by a defendant who, when sued on an
obligation of his own, should by a distinct plea claim a set-off
of some demand which he had against the plaintiff of a similar
character.  But this original statutory doctrine of the right
of set-off has been modified, enlarged, and extended in many
ways.

1. The courts of common law have long established the prin-
ciple of set-off as applicable to mutual judgments in the same
court.  And it is said that this power of setting off judgments
not only in the same court, but in different courts, did not

depend upon the statutes of set-off, but upon the general juris-
diction of the court over its suitors.   See *Barker* v. *Braham*,
2 Bl. R. 869; *Mitchell* v. *Oldfield*, 4 T. R. 123; 3 Caines's Cases,
190.   In *Simpson* v. *Hart*, 1 Johns. (N. Y.) Ch. 91, Chancellor
Kent refused to set off one judgment against another although
the case was otherwise made out, because the jurisdiction was
ample at law, and the application had been first made there
and denied.   See also *Simpson* v. *Huston*, 14 Tex. 481.

2. This remedy has been very much extended in equity
where the insolvency of the judgment plaintiff, his non-residence
within the jurisdiction of the court, the fact that the mutual
obligations have grown out of the same transaction, and many
other purely equitable considerations, have been held to author-
ize the setting off of many classes of obligations held by the
defendant, against a judgment duly recovered against him in
a court of law.   *Merrill* v. *Souther*, 6 Dana (Ky.), 305; *Simp-
son* v. *Hart*, 1 Johns. (N. Y.) Ch. 91; *Palmateer* v. *Meredith*,
4 Mar. J. J. (Ky.) 74; *Davis* v. *Milburn*, 3 Clarke (Iowa), 163;
7 How. 279.

It will be thus seen that, independent of statutes, the courts
have long exercised the power of extinguishing judgments by
compelling the plaintiff to receive something else than money in
satisfaction thereof.   It is true that, where this power has been
exercised under the statutory or equity power of the court, it
has been generally, perhaps universally, limited to cases where
the defendant held the claim which he presents for set-off at
the time the suit was brought in which he proposes the set-off.
But undoubtedly there may be cases in which a claim coming
to the ownership of the judgment debtor, even after the judg-
ment has been rendered against him, presents a strong equity
to have it set off against that judgment.   In such cases it must
be within the competency of the legislative body so to extend
the remedy by set-off as to embrace them.

Such is the law of the State of Louisiana under their civil-
code system of jurisprudence.   In the case of *Pattison* v. *Ed-
monston,* 4 La. Ann. 157, Carter & Co. obtained a judgment
against Pattison.   After an execution was issued, and after an
injunction against it had been dissolved, the defendant pur-
chased of a third party a judgment against Carter & Co.; and

the Supreme Court, reversing the judgment of the inferior court, held that, from the date of the notice of this purchase, the parties became mutually indebted, and their respective claims were liquidated and due, and compensation took place within the meaning of sect. 2203 of the Civil Code, the effect of which was to extinguish the judgment of Carter & Co.

This provision of the Code of Louisiana, and the construction given to it by her highest court, is identical with the Roman law, which is, indeed, the foundation on which that code is built. That law went much further than any of our statutes have gone, and further than our courts of equity have gone. The doctrine of the civil law was that mutual debts extinguished each other by operation of law, and that in such case no discovery could be had except for a balance due on the larger debt. And this extended to cases in which the debtor had procured an assignment or cession of the debt of a third person against his creditor. So that from the moment the creditor had notice of the transfer, compensation, as it is called in the civil law, took place ; that is, the debts were extinguished so far as the amount due on the smaller debt could rightfully compensate the larger. This matter is well set forth by Justice Story in his Equity Jurisprudence, sects. 1438 to 1444 inclusive. His closing remarks are very pertinent to the case in hand. " The general equity and reasonableness," says he, " of the principles upon which the Roman superstructure is founded make it a matter of regret that they have not been transferred to their full extent to our system of equity jurisprudence. Why, indeed, in cases of mutual debts, independently of any notion of mutual credit, courts of equity should not have at once supported and enforced the doctrine of the universal right of set-off as a matter of natural equity, it is not easy to see."

The legislation of North Carolina, which we have already cited, is of this character.

The act of Aug. 22, 1868, made the bills of a bank a legal set-off in the hands of any person sued by the bank, but left the right subject to the usual rule, that it must be pleaded in the action. The act of March 17, 1869, declared that this right should extend to judgments already rendered, and that it might be asserted by a plea of set-off in the court at law or by

an injunction in chancery; and the act of December, 1869, authorized the same relief by motion in the court where the judgment was rendered. Are the acts of the North Carolina legislature so wholly outside of the general doctrine of set-off as to be void? The idea of set-off is not the same as payment. It is the doctrine of bringing into the presence of each other the obligations of A. to B. and of B. to A., and by the judicial action of the court make each obligation extinguish the other. And this process is applicable to any class of obligations which the legislative power of the State chooses to bring within its operation.

That it is exercised in aid of justice when a bank of circulation is compelled to receive that circulation in satisfaction of debts due to it, whether they be in judgment or in any other form, can hardly be questioned, if the rights of no one but the bank are affected by the act.

In what we have here said, we do not mean to be understood that, where the creditors of the bank have a right to have such a debt paid in lawful money, the legislature can deprive them of that right; nor that in any other case, where the judgment creditor represents an interest in the contract, which has a right to demand its payment in lawful money, the State can authorize its payment in any thing else.

In the case before us, if it appeared by the agreed facts on which the case was tried that there existed any creditors of the bank who had proved their debts as the law required, the case might have been different. But there is no evidence in this record that there was any other creditor of the bank in existence besides the defendant, when he made this motion for set-off.

And though it may be held that the bank had ceased to exist, it is clear that the stockholders, whose interest in that case would be represented by the commissioner, have no equity superior to that of the defendant, or which could be interposed to prevent the exercise of the right of set-off under the statute. That the right to set-off is by the statute extended to obligations of the bank, bought by defendant after the judgment was rendered against him, does not necessarily make it unconstitutional. The debt of the bank is a just debt. To compel the defendant first to pay his debt in money, and then take the chances of collecting of the bank, is unjust.

The act of the North Carolina legislature is but an enlargement of the principle of set-off to meet this class of cases. Though the statute uses the word "payment," it is obvious that payment in the technical sense is not meant. The whole proceeding is one of set-off. The defendant is compelled to make his application to the court, produce his bank-bills, and deposit them there. The order or judgment of the court is that the obligation of the bills and the obligation of the judgment are set off against each other, and both are extinguished. They are both satisfied.

It may be said that this legislation is retroactive; and, as applied to the case before us, it is so. But there is no constitutional inhibition against retrospective laws. Though generally distrusted, they are often beneficial, and sometimes necessary. Where they violate no provision of the Constitution of the United States, there exists no power in this court to declare them void.                              *Judgment affirmed.*