UNITED TRANSP. & LIGHTERAGE CO. v. NEW YORK & BALTIMORE TRANSP. LINE.

NEW YORK & BALTIMORE TRANSP. LINE v. UNITED TRANSP. & LIGHTERAGE CO.

(District Court, S. D. New York. June 23, 1910.)

1. ADMIRALTY (§ 1*)—JURISDICTION—MATTERS OF EQUITABLE COGNIZANCE.

While a court of admiralty is often spoken of as one of equity, the phrase means no more than that equitable principles are applied to the solution of matters of maritime jurisprudence, and not that an admiralty court may draw within its jurisdiction matters primarily of nonmaritime cognizance.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 1–17; Dec. Dig. § 1.*]

2. ADMIRALTY (§ 36*)—ANSWER—SET-OFF.

There is no warrant in the admiralty practice for a counterclaim, and a set-off is cognizable only so far as it relates to the particular transaction which is the subject of the libel, and goes to reduce or overcome the original demand.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 36.*]

3. ADMIRALTY (§ 36*)—PLEADING—CROSS-LIBEL.

A cross-libel cannot be maintained in admiralty unless it arises out of the same cause of action as that propounded in the original libel.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 36.*]

4. ADMIRALTY (§ 36*)—SUIT FOR BREACH OF CONTRACT—SET-OFF—CROSS-LIBEL.

Libelant for a number of years performed lighterage services for respondent under an agreement fixing the prices therefor. New officers having succeeded to the management of the business of respondent corporation, a new agreement as to prices was made between them and libelant. *Held*, that a new contract was thereby created, and that in a suit by libelant to recover for services rendered thereunder respondent could not plead as a set-off or by way of cross-libel a claim for damages, on the ground that the prices previously paid were exorbitant and the agreement therefor collusive and fraudulent, something did not arise out of the same transaction or cause of action for which libel was filed, but out of a separate contract.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 36.*]

5. CONTRACTS (§ 1*)—DEFINITION.

A contract is a transaction between two or more persons in which each party comes under an obligation to the other, and each reciprocally acquires a right to whatever is promised by the other.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 2, pp. 1513–1534; vol. 8, pp. 7615, 7616.]

In Admiralty. Suit by the United Transportation & Lighterage Company against the New York & Baltimore Transportation Line, and cross-libel by respondent against libelant. Decree for libelant. Cross-libel dismissed.

The original libel was filed by the lighterage company to recover for lighterage services rendered respondent during a period definitely stated, and pursuant to a verbal contract whereby libelant for an agreed rate of pay undertook "to lighter goods and merchandise at the port of New York from the

vessels owned and controlled by the respondent to various points * * * and also to lighter goods and merchandise from (said) various points * * * to the vessels of said" respondent. The respondent transportation line denied that any "verbal contract" was made as alleged, and averred that "through its officers and agents * * * it declared that it could and would pay no more and only such sums as are (stated in the libel) not as a reduction of any existing or extant contract or contracts but absolutely as a limit of price for such services, and the same were thereupon and thereafter charged to (respondent) by (libelant) at the rates set forth" in the libel. The answer then set up a "counterclaim," the substance of which is that for a long time prior to the dates in the libel mentioned libelant had been performing lighterage services for respondent at exorbitant and unlawful, if not fraudulent, rates of pay. Such rates are said to have been exorbitant because they were much higher than those charged for similar services by other persons in the same line of business and same neighborhood. They were unlawful because said exorbitant rates were agreed upon between one of the principal officers of the libelant and a like officer of the respondent, who were son and father, the father being at the same time a stockholder and officer in both libelant and respondent, and the son being an officer and (apparently) a stockholder in libelant, and also an employé of respondent. The answer does not in terms charge active fraud on the part of father and son aforesaid, but it does allege that the arrangements made and the prices paid were "improper," and in argument charges of extreme fraud have been pressed.

The cross-libel sets up the same matter as is asserted by way of "counterclaim" in the answer, and demands as affirmative relief the repayment by the lighterage company to the transportation line of the difference between the charges made and paid prior to the period sued for and what is alleged to have been the usual and customary rate of charge for similar services at the times they were rendered. The singular method above set forth of pleading to the contract alleged in the libel is explained by the following facts: For a long time prior to May 1, 1908, the lighterage company had furnished certain boats for lighterage purposes to the transportation line, doing this in pursuance of an oral agreement between the father and son aforesaid, which agreement fixed the rates of pay, and is the agreement or contract concerning which the transportation line now complains. It is quite evident that Mr. Groves (the father) was prior to May, 1908, and for many years had been, a very influential, if not the most influential, personage connected with the transportation line. He was an old stockholder and its general manager. He had built up its business from a condition of continued loss to one of great apparent prosperity, and it is evident from his testimony that he expected to do as he pleased in matters relating to the transportation line's affairs, without much, if any, consultation with fellow officers, directors, or stockholders. Shortly prior to May, 1908, he (with apparently certain other shareholders) sold out a controlling interest in the transportation line's stock to one Monk. Mr. Groves seems then to have been no longer a shareholder, and certainly he ceased to be an officer. As general manager he was succeeded by one Roome, and Roome thereupon sent for the son (Groves, Jr.), and told him that a lower rate would thereafter be paid for lighterage services in New York Harbor than had been current under the régime of Groves, Sr. To this rate Groves, Jr., agreed for the libelant lighterage company, and for services so rendered pursuant to this conversation between Roome and Groves, Jr., the libel is brought on the theory that these two men did in May, 1908, make a contract for breach of which this action lies. The answer does not admit that a contract was then made, because it is of the essence of respondent and cross-libelant's position that there never was but one contract or agreement between these two corporations, and that was the exorbitant, unlawful, and improper, if not fraudulent, contract, made between father and son as aforesaid, but modified as to rate of pay by Roome as last above set forth.

Mr. Laws and Mr. Betts, for libelant.
Mr. Kneeland, for respondent and cross-libelant.

HOUGH, District Judge (after stating the facts as above). The first question suggested is this: During all the times covered by the pleadings herein were two contracts or only one contract made between the parties to this litigation? A complete and final definition of the word "contract" will perhaps never be reached, but I know of no better description of a business or commercial compact than that approved by Washington, J., in Dartmouth College v. Woodward, 4 Wheat., at page 656 (4 L. Ed. 629):

"A transaction between two or more persons in which each party comes under an obligation to the other and each reciprocally acquires a right to whatever is promised by the other."

Applying this to the uncontradicted evidence, when and how did libelant and respondent obtain the reciprocal rights against each other averred in the libel and admitted by the answer? Clearly on or about May 1, 1908, when Mr. Groves, Jr., and Mr. Roome had their conversation. Until the minds of those two men met whatever other contract or contracts may have existed between the lighterage company and the transportation line, the contract in suit did not exist; and the certain test of this is that no action could have been brought upon it. It does not advance matters to speak of this conversation as a modification of an existing contract. A contract once made cannot be modified except by a new meeting of minds, and, when such mind meeting occurs, a new contract springs into existence.

Holding, therefore, that the contract sued on in the libel had no existence before May, 1908, by what right can the respondent sustain either by way of set-off or cross-libel the matters shown in its pleadings?[1]

Undoubtedly the rule of the common law was hard, and a statute was required to correct an inequity that became more apparent as commercial transactions expanded, "but courts of equity from a very early day were accustomed to grant relief in that regard independently as well as in aid of statutes upon the subject." Per Fuller, C. J., Scott v. Armstrong, 146 U. S. 507, 13 Sup. Ct. 150, 36 L. Ed. 1059. The remedy of set-off "has been very much extended in equity * * * (where) the mutual obligations have grown out of the same transaction; and * * * purely equitable considerations have been held to authorize the setting off of many classes of obligations held by the defendant against a judgment duly recovered against him, in a court of law." Blount v. Windley, supra.

It is true that a court of admiralty is often spoken of as one of

[1] The word "set-off" is not used in respondent's pleadings, but the "counterclaim" (for which no warrant is found in admiralty practice) has been regarded by all parties as an attempted set-off. "Set-off" (properly so called) did not exist at common law, but is founded on St. 2 George II, c. 24, § 4, which in substance and effect enacted that, where there were mutual debts between the plaintiff and the defendant, one debt may be set against the other, and such matter may be given in evidence under the general issue or be pleaded in bar, so that notice shall be given of the sum or debt intended to be offered in evidence." United States v. Eckford, 6 Wall. 488, 18 L. Ed. 920. And see, also, as to the origin of "set-off," Hall v. United States, 91 U. S. 562, 23 L. Ed. 446; Blount v. Windley, 95 U. S. 176, 24 L. Ed. 424; Carr v. Hamilton, 129 U. S. 255, 9 Sup. Ct. 295, 32 L. Ed. 669.

equity, but that phrase means no more than that equitable principles are applied to the solution of matters of maritime jurisprudence. It is a perversion of the phrase to argue from it that, because admiralty seeks for aid in the analogies of equity, a maritime court is therefore entitled to draw within its jurisdiction matters primarily of nonmaritime cognizance. The temptation is often strong to pursue a controversy between two litigants into all its ramifications, and endeavor to adjudicate them all in one decree. But in a court of limited jurisdiction (however important) the temptation should be carefully withstood, and in this matter of set-off the inquiries must always be made: (1) Does the alleged set-off grow out of the same transaction as that which must be proven to support the libel; and, if it does, (2) could the claim be made the subject of an independent action in the admiralty?

The first inquiry has often been pursued, and quite recently in this court in Hastorf v. Degnon-McLean Contracting Co. (D. C.) 128 Fed. 982, and the result reached that ordinary "set-off is not cognizable in admiralty except so far as it relates to the particular transaction which is the subject of the libel and goes to reduce or overcome the original demand." The particular transaction alleged in this libel is the breach of a contract made in May, 1908, and therefore, without passing upon many interesting questions raised by libelant, I hold that the matters set out in the answer to the original libel are not proper subjects of set-off herein, and cannot therefore be regarded in the original suit.

The second question above suggested, viz., whether a good set-off in admiralty must always be a good independent maritime cause of action, I do not find it necessary to consider in this case, and no opinion is expressed thereon. The cross-libel is, as the record herein shows, filed specifically in pursuance of rule 53 of the Supreme Court in admiralty. That rule declares the practice whenever a cross-libel is filed "arising out of the same cause of action for which the original libel was filed," and has been construed to mean that no cross-libel can be filed unless it does arise out of "the same cause of action as that propounded in the original pleading." The Theresa Wolf (D. C.) 4 Fed. 152. And the same result has been reached in this court in George D. Emery Co. v. Tweedie Trading Co. (D. C.) 143 Fed. 144.

Under the cases cited, therefore, this cross-libel cannot be maintained because it does not arise out of the same cause of action as that on which the original libel is based. The further question whether the cross-libel sets forth a cause of action in admiralty at all need not therefore be considered, although I assume that even if it be possible to use equitable, but nonmaritime, demands by way of set-off, admiralty can grant no affirmative relief on any libel, original or cross, which does not reveal a cause of action on a maritime contract or for a maritime tort. Whether a recovery based upon alleged fraud in the procurement and enforcement of a completed contract can ever be the subject of a libel in admiralty, even though the completed contract be maritime, is an interesting question, but for the reasons above given not necessary for the determination of this case, and therefore as to it, no opinion is expressed.

Decree for libelant in original libel; cross-libel dismissed. Costs in both cases.