HOLLAND et al. v. GENERAL MOTORS
CORPORATION.

CASHEBA et al. v. SAME.

Civil Actions Nos. 3276, 3299, 3319, 3320.

District Court, W. D. New York.

Sept. 4 and Dec. 15, 1947.

David Diamond, of Buffalo, N. Y., for plaintiffs.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y. (Daniel J. Kenefick, Lyman M. Bass, and Robert M. Hitchcock, all of Buffalo, N. Y., of counsel), for defendant.

Tom C. Clark, Atty. Gen., Peyton Ford, Asst. Atty. Gen., George L. Grobe, U. S. Atty., of Buffalo, N. Y., Enoch R. Ellison, Sp. Asst. to Atty. Gen., and Johanna M. D'Amico, Atty., Department of Justice, of Washington, D. C., for the United States.

KNIGHT, District Judge.

Each of the above-entitled actions is a so-called "Portal-to-Portal" suit. The defendant moves for a dismissal on the ground that the complaint does not allege the necessary jurisdictional facts.

The plaintiffs urge that a decision of the motion should be deferred pending a "factual" determination. This contemplates deferment to the conclusion of the trial of one or all of these suits in which there are hundreds of parties-plaintiff and in which it may well be presumed there will be presented many issues of fact.

The question of the constitutionality of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq.; is necessarily involved in these motions. In the interest of a speedy final determination of this question, it is believed it should be considered at this time, and simultaneously with such consideration a determination of the procedural point raised by the plaintiffs.

The United States, intervening since the motions herein first came on for a hearing, has asked an extension of thirty days in which to submit a brief in support of the constitutionality of said Portal-to-Portal Act of 1947 after service upon it of plaintiffs' and defendant's briefs herein. Thus far the plaintiffs have briefed only incidentally the constitutional question. The defendant has briefed at some length the question, but it should be permitted to answer any further arguments or briefs submitted by the plaintiffs and the United States.

It has seemed to me that there is less cause for confusion now by the foregoing statement, rather than by an extended discussion of possible conflicting authorities.

The date for final argument herein will be fixed by the Court or agreed upon by Counsel.

Dec. 15, 1947.

The defendant in the above-entitled suits moves the court for dismissal of the complaints for lack of jurisdiction. The questions involved in each suit are the same, and what is said herein applies to all.

Lack of jurisdiction is grounded on the claim that the complaints allege no facts showing that any of the alleged activities were engaged in during the portion of the day with respect to which they were made compensable under any alleged contract provision, custom or practice making such activities compensable, all as required by Section 2(a–d), Part II, of the Portal-to-Portal Act, approved May 14, 1947.

Upon certification of this court that the constitutionality of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq. (hereinafter called Portal Act), had been drawn in question, the United States has intervened in support of its constitutionality.

Each complaint purports to set up a cause of action under the provisions of the

Fair Labor Standards Act of 1938, 29 U. S.C.A. § 201 et seq., by virtue of which an employee is entitled in the computation of his statutory work week to compensation for overtime, computed at 1½ times the regular rate at which he was employed. The pertinent allegations of the complaints, in substance, are: That plaintiffs were employed in interstate commerce; that their work week was longer than permitted by law without overtime compensation; that they were required to arrive at defendant's premises and to remain there for substantial periods of time before their scheduled starting time and after the scheduled quitting time; that such periods were consumed by the time necessary to change clothing, obtain and return equipment, in preparation for work; and that such overtime employment was in activities under defendant's control and for its benefit, and that they have not been compensated therefor.

Plaintiffs oppose these motions on procedural grounds and also the ground that the Portal Act of 1947 is unconstitutional as to actions brought prior to May 14, 1947.

■ It is well settled in the Federal Courts that one seeking a recovery must affirmatively show jurisdiction. The Portal Act is an amendment to the Fair Labor Standards Act of 1938. It is not the case of an exception where a party must show that it does not come within the exception. Vide: The Assessors v. Osbornes, 9 Wall. 567, 76 U.S. 567, 19 L.Ed. 748; Norton v. Larney, 266 U.S. 511, 45 S.Ct. 145, 69 L. Ed. 413; Smith v. McCullough, 270 U.S. 456, 46 S.Ct. 338, 70 L.Ed. 682; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Gully v. First Nat. Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; LeMieux Bros. Inc. v. Tremont Lumber Co., 5 Cir., 140 F.2d 387; United States v. Green, 9 Cir., 107 F.2d 19.

Plaintiffs assert that the validity of plaintiffs' claim of constitutionality may depend on facts which may be developed on the trial and that any decision on the motions should be deferred pending a "factual determination." If the Portal Act is held to be unconstitutional, issue, if joined,

may require factual determination, otherwise not. The basic inquiry is whether Congress could take from the courts jurisdiction in suits on complaints such as here.

Plaintiffs claim that the Portal-to-Portal Act is an attempt to control jurisdiction and procedure to defeat substantive rights guaranteed by the Constitution; that the Act violates the Fifth Amendment of the Constitution by depriving the plaintiffs of their property without due process of law and violates Article III, Section 1 of the Constitution, through the attempt to exercise judicial power reserved to the courts.

The decision in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, led to a veritable deluge of suits by thousands upon thousands of employees in which damages are demanded in a total in dollars colossal in amount. This decision awoke employees coming under the provisions of the Fair Labor Standards Act to the expectation that they were entitled to compensation for activities in which they had long been engaged with no expectation of compensation.

As of January 31, 1947, the Administrative Office of the United States Courts reported 1515 cases had been filed in which the aggregate claims totaled $5,785,204,606. A great number of suits were brought after that date. In many instances no specific amount of damages was stated in the complaints. In this Western District of New York, 110 suits have been brought on behalf of 72,674 plaintiffs, seeking damages in the amount of $91,947,000, not including those suits in which no specific amount of damages is claimed. There are 4280 plaintiffs in the actions in this suit.

In the brief time since the Portal Act was enacted, motions in effect, as here, have been decided in many Federal District Courts throughout the United States. I have read many of these decisions. So far as I have learned there has been a unanimity of decisions, save in a few cases, that the Portal Act is constitutional. No Circuit Court so far as I am informed has passed on the questions presented here. Ward Baking Co. v. Holtzoff, U. S. District Judge, 164 F.2d 34, decided in this Circuit in November, 1947, does not do so. It

may seem an act of supererogation on my part to announce any extended opinion. What is here said is said to emphasize the significance of two things, which to me seem to have great importance in deciding the questions presented. These are the finding of an emergency, as set out in the Portal Act, and the authority given to Congress where interstate commerce is concerned.

Section 1 of the Portal Act contains a clear and comprehensive statement of findings and the policy of Congress in the enactment of the legislation. Such a type of what may ordinarily be called a preamble is not common in statutes. It is, however, of long standing and has been employed numerous times in emergencies and in extraordinary circumstances. Here most unusual and extraordinary circumstances were disclosed to Congress. Findings and a statement of policy appear in the Fair Labor Standards Act of 1938, Sec. 2(a), and it is left undisturbed. There, as here, they were purposed to fortify the other provisions of the Act as an emergency measure. The constitutionality of that Act has been determined by numerous decisions of the courts. Comparable declarations, also, are the joint resolutions adopted by Congress on June 5, 1933, with respect to the "Gold Clause" in private contracts for the payment of money. 48 Stat. 112. Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352. The Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq., disclosed such.

The most significant parts of Section 1 are in the findings in the Portal Act of 1947, that the payments of unexpected liabilities would bring about financial ruin of many employers, thereby resulting in the reduction of industrial operations and curtailing employment; that serious and adverse effects upon the revenues of Federal, State, and local governments would follow; and that a substantial burden on commerce and obstruction to the free flow of goods in commerce would result. The policy of Congress is therein declared to be the purpose "to meet the existing emergency and to correct existing evils (1) to relieve and protect interstate commerce * * *; (2)

to protect the right of collective bargaining; and (3) to define and limit the jurisdiction of the courts." 29 U.S.C.A. § 251 (b).

In passing on the constitutionality of the Fair Labor Standards Act of 1938, the court in Opp Cotton Mills v. Administrator, 312 U.S. 126, 145, 61 S.Ct. 524, 533, 85 L.Ed. 624, said:

"The essentials of the legislative function are the determination of the legislative policy and its formulation as a rule of conduct. Those essentials are preserved when Congress specifies the basic conclusions of fact upon ascertainment of which, from relevant data by a designated administrative agency, it ordains that its statutory command is to be effective."

See also United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.

"Can we say that this determination (joint resolution) is so destitute of basis that the interdiction of the gold clauses must be deemed to be without any reasonable relation to the monetary policy adopted by the Congress?" Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 313, 55 S.Ct. 407, 418, 79 L.Ed. 885, 95 A.L.R. 1352. The answer was in the negative.

Section 2(d) of the Portal Act provides:

"No court of the United States * * *, shall have jurisdiction of any action or proceeding, whether instituted prior to or on or after the date of the enactment of this Act, to enforce liability or impose punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, * * * to the extent that such action or proceeding seeks to enforce any liability or impose any punishment with respect to an activity which was not compensable under subsections (a) and (b) of this section."

Subsection (a) relieves employers of liability for the payment of minimum wages and overtime compensation by reason of any activity engaged in " * * * except an activity which was compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer."

Subsection (b) provides:

"(b) For the purposes of subsection (a) * * *, an activity shall be considered as compensable under such contract provision or such custom or practice only when it was engaged in during the portion of the day with respect to which it was so made compensable."

Plaintiffs assert they have a "vested property" right which cannot be divested by act of Congress. Our concern is with Section 2(d) of the Portal-to-Portal Act, but only in so far as its retroactive provisions are in effect. The rights asserted here are purely statutory. There was no agreement between the parties as respects payment for the activities in question. There was no meeting of minds.

Plaintiffs attempt to correlate the question of the constitutionality of Section 2(d) of the Portal Act with the question of "vested rights," urging that Section 2(d), supra, is valid only if Section 2(a) and (b) are held not to offend the Fifth Amendment to the Constitution. There is no merit in this effort. Unless the activity for which a party seeks compensation is engaged in under "an express provision of a written or nonwritten contract" or "a custom or practice * * *, covering such activity" in effect, a complainant cannot recover, because of lack of jurisdiction in this court; otherwise he could recover and jurisdiction would be retained. It must be borne in mind that there is a clear distinction here made between what must be alleged to meet the provisions of Section 2 and what must be proved with respect to any contract or custom. These are motions on the pleadings. We are concerned only with their sufficiency.

Section 1, Article III, of the Constitution provides: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."

■ Section 2, Article III, defines the extent and power of the inferior courts.

"Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. * * * The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an Act of Congress to confer it." Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 82, 67 L.Ed. 226, 24 A.L.R. 1077.

Congress can restrict or withold jurisdiction of courts to enforce rights created by statute. Sutherland on Statutory Construction, 165; Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409; Dable Grain Shovel Co. v. Flint, 137 U.S. 41, 11 S.Ct. 8, 34 L.Ed. 618; Louisville & Nashville R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671.

■ Congress had the power to terminate the statutory rights granted under the Fair Labor Standards Act of 1938.

"The general rule is that powers derived wholly from a statute are extinguished by its repeal." Flanigan v. Sierra County, 196 U.S. 553, 25 S.Ct. 314, 315, 49 L.Ed. 597.

■■ The claims in suit rely for their validity on a statute. Congress has plenary power to terminate purely statutory rights which it has incurred. Such power does not exist as regards claims based on contract, save where they prevent the accomplishment of a legitimate public purpose or policy. These claims, as alleged, are not based on contracts. It is urged that they are to be treated as based on contracts because the statutory provision for compensation became part of the employment

agreement, but, if true, it must equally be true that they are made with implied reference to authority in Congress to change the statute.

"Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order." Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 239, 78 L.Ed. 413, 88 A.L.R. 1481.

The only implied agreement here on the part of the parties was to live up to the Fair Labor Standards Act, as interpreted thereafter by competent authority. Neither employer nor employee at any time, at least up to 1946, expected payment of any compensation for these activities. We start with 1938. The nature of these activities are not of the type of services performed under unwritten or implied contracts of employment. In this connection it is to be said that plaintiffs sue to recover, not only for loss from failure to pay for these activities, but also seek to recover liquidated damages to an equal amount.

"The term 'contract' is used in the Constitution in its ordinary sense, as signifying the agreement of two or more minds, for considerations proceeding from one to the other, to do or not to do certain acts. Mutual assent to its terms is of its very essence." Louisiana v. Mayor of New Orleans, 109 U.S. 285, 3 S.Ct. 211, 213, 27 L. Ed. 936.

 Plaintiffs have no "vested" rights. Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A. L.R. 1352, is a case clearly in point. There the gold clauses in private contracts were nullified.

"There is no constitutional ground for denying to the Congress the power expressly to prohibit and invalidate contracts although previously made, and valid when made, when they interfere with the carrying out of the policy it is free to adopt." Norman v. Baltimore & O. R. Co., supra, 294 U.S. pages 309, 310, 55 S.Ct. 416, 417.

Justice Cardozo, dissenting, with whom Justices Brandeis and Stone concur, in Coombes v. Getz, 285 U.S. 434, 450, 451, 52 S.Ct. 435, 439, 440, 76 L.Ed. 866 in part, said:

"The section of the Constitution whereby contracts are secured against impairment is aimed at true agreements, and not at quasi contracts as distinguished from agreements implied in fact. * * * Either the petitioner took his cause of action subject to such infirmities or contingencies as were attached to it by the law of the state of its creation, or he did not take anything."

In Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 1220, 86 L. Ed. 1682, private contract rights were under consideration. The employer relied upon the Fifth Amendment as protecting his contract right. The court said:

"If overtime pay may have this effect (of removing burdens) upon commerce, private contracts made before or after the passage of legislation regulating overtime cannot take the overtime transactions 'from the reach of dominant constitutional power.'"

The fact that the Portal Act is retroactive as to the plaintiffs herein makes no difference under the circumstances shown. We are not dealing with a written or unwritten contract.

"It may be said that this legislation is retroactive; and as applied to the case before us, it is so. But there is no constitutional inhibition against retrospective laws. Though generally distrusted, they are often beneficial and sometimes necessary. Where they violate no provision of the Constitution of the United States, there exists no power in this Court to declare them void." Blount v. Windley, 95 U.S. 173, 180, 24 L. Ed. 424.

"Where a transaction is not based upon any assent of parties, it cannot be said that any faith is pledged with respect to it; and no case arises for the operation of the prohibition. Garrison v. City of New York, 21 Wall. 203 [22 L.Ed. 612]." Louisiana v. Mayor, 109 U.S. 285, 3 S.Ct. 211, 213, 27 L.Ed. 936.

See also: Dartmouth College v. Woodward, 4 Wheat. 518, 17 U.S. 518, 4 L.Ed. 629; Collector v. Hubbard, 12 Wall. 1, 79 U.S. 1, 20 L.Ed. 272; The Assessors v. Osbornes, 9 Wall. 567, 76 U.S. 567, 19 L.Ed.

748; Omnia Co. v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773; Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077.

Coupled with and re-inforcing the right in Congress to restrict or amend the Fair Labor Standards Act, insofar as it is retroactive, are the facts that Congress was dealing with an emergency and was acting under the authority of the commerce clause of the Constitution. Article 1, § 8, cl. 3. The Supreme Court many times has expressly held the Congress has broad powers under its provision and has construed many cases in that light. Plaintiffs were allegedly engaged in interstate commerce. Congress has found that the validity of the Portal claims "constitutes a substantial burden on commerce and a substantial obstruction to the free flow of goods in commerce." Congress had the power to terminate the "Portal-to-Portal Claims" by withdrawing legislative support and this by virtue of its powers over interstate commerce.

In the recent case of American Power & Light Co. v. Securities and Exchange Commission, 329 U.S. 90, 100, 67 S.Ct. 133, 140, Mr. Justice Murphy said, in part, after stating specific things concerning which Congress could act:

"In short, Congress is completely uninhibited by the commerce clause in selecting the means considered necessary for bringing about the desired conditions in the channels of interstate commerce. Any limitations are to be found in other sections of the Constitution. Gibbons v. Ogden, 9 Wheat. 1, 196, 6 L.Ed. 23."

"If shippers and carriers stipulate for specified rates, although the rates may be lawful when the contracts are made, if Congress through the Interstate Commerce Commission exercises its authority and prescribes different rates, the latter control and override inconsistent stipulations in contracts previously made." Norman v. Baltimore & Ohio R. Co., supra, 294 U.S. p. 308, 55 S.Ct. 416.

In Kentucky & Indiana Bridge Co. v. Louisville & Nashville R. Co., 34 Am. & Eng. R. Cases 630, the court said:

"But the act to regulate commerce is a general law, and contracts are always liable to be more or less affected by general laws, even when in no way referred to. * * * It is a necessary effect of any considerable change in the public laws." (See: Louisville & Nashville R. Co. v. Mottley, 219 U.S. 467, 485, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A., N.S., 671.)

In Louisville & Nashville R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 271, 55 L.Ed. 297, 34 L.R.A.,N.S., 671, the court said, in part:

"They (authorities) support the view that, as the contracting question would have been illegal if made after passage of the commerce act, it cannot now be enforced against the railroad company even though valid when made."

Again, as said in Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 228, 20 S.Ct. 96, 102, 44 L.Ed. 136:

"The power to regulate interstate commerce is, as stated by Chief Justice Marshall, full and complete in Congress, and there is no limitation in the grant of the power which excludes private contracts of the nature in question from the jurisdiction of that body. Nor is any such limitation contained in that other clause of the Constitution which provides that no person shall be deprived of life, liberty, or property, without due process of law."

Again quoting from Norman v. Baltimore & Ohi&o R. Co., 294 U.S. 240, 307, 308 309, 55 S.Ct.. 407, 416, 79 L.Ed. 885, 95 A.L. R. 1352:

"Accordingly, it has been 'authoritively settled' by decisions of this Court that no previous contracts or combinations can prevent the application of the Anti-Trust Acts (15 U.S.C.A. § 1 et seq.) to compel the discontinuance of combinations declared to be illegal. * * * Contracts, however express, cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but, when contracts deal with a subject-matter which lies within the control of the Congress,

they have a congenital infirmity. Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them."

■ From the time of the decision in Gibbons v. Ogden, 9 Wheat. 1, 22 U.S. 1, 6 L.Ed. 23, down to the present time, the Supreme Court has consistently held that rights acquired under federal legislation regulating commerce may be legally taken away where it is found that such action is necessary in the promotion of commerce. Among the many cases, other than those to which reference has heretofore been made, and which cases deal with the commerce clause of the Constitution, are these: Marshall v. Baltimore & Ohio R. Co., 16 How. 314, 57 U.S. 314, 14 L.Ed. 953; Insurance Co. v. Ritchie, 5 Wall. 541, 72 U.S. 541, 18 L.Ed. 540, Ex parte Mc-Cardle, 7 Wall. 506, 74 U.S. 506, 19 L.Ed. 264; Veazie Bank v. Fenno, 8 Wall. 533, 75 U.S. 533, 19 L.Ed. 482; Knox v. Lee (Legal Tender Cases), 12 Wall. 457, 79 U.S. 457, 20 L.Ed. 287; Mitchell v. Clark, 110 U.S. 633, 4 S.Ct. 312, 28 L.Ed. 279; Dable Grain Shovel Co. v. Flint, 137 U.S. 41, 11 S.Ct. 8, 34 L.Ed. 618; Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Paramino Co. v. Marshall, 309 U.S. 370, 60 S.Ct 600, 84 L.Ed. 814; United States v. Willow River Power Co., 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101; Brooklyn Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296.

To sustain their claim that the Portal-to-Portal Act, in its retroactive feature, violates the due process clause of the Constitution, the plaintiffs rely mainly on the following cases: Steamship Co. v. Joliffe, 2 Wall. 450, 17 L.Ed. 805; Ettor v. City of Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773; Forbes Pioneer Boat Line v. Board of Com'rs. of Everglades Drainage Dist., 258 U.S. 338, 42 S.Ct. 325, 66 L. Ed. 647; Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866.

Each of these cases is definitely distinguishable from those at bar. None involved suits based on claims of the nature presented here. They were concerned with "vested" property rights based on agreements. Here, these suits have no contract provision to support them. The foregoing cases involved no emergency question nor was the question of the commerce clause under consideration.

■ It is asserted that the Portal-to-Portal Act violates Article III, Section 1 of the Constitution by attempting to exercise judicial powers reserved to the courts. This is predicated on the assumption that here is an attempt to overrule the decision in the Mt. Clemens case. This contention has no merit. Sufficient answer is found in many cases hereinbefore cited. Norman v. Baltimore & Ohio R. Co., supra, did exactly what the plaintiffs here claim is violative of the Constitution. Although the claims in question there were based upon contracts rather than statute, the claims would have continued enforceable in the absence of the subsequent statute. In no part of the Act has Congress attempted to construe the Fair Labor Standards Act so as to invalidate the interpretation placed on it by the Supreme Court. It assumed that the claims might be enforceable. The Portal-to-Portal Act assumes the prior validity of so-called Portal-to-Portal claims under the Fair Labor Standards Act of 1938 as interpreted by the Supreme Court, and relieved employers of liability thereon. The cases cited by the plaintiffs to support their position show no situation like the one here. These cases deal with the so-called "judicial law making" in attempts to destroy "vested property rights." Plaintiffs say the vice of the Portal-to-Portal Act is that the court would have jurisdiction of the claims stated in the present complaint even under the Portal-to-Portal Act if the liability asserted had arisen after passage of the legislation.

The statute properly makes a distinction between the rights given future and present claimants. As to the claims in suit, neither employee nor employer had any intent that any compensation would be made for these particular activities. The employer was carrying on his business on the basis of an agreement for employment at the wage which was paid. Even were the de minimis rule to be continued, the cost to industry would be great. The burden would not be

solely measured by the compensation to be paid but the cost of litigation coupled with this would be great. As to future claimants they and their employers will know their respective liabilities and responsibilities. An emergency existed. These thousands of claims were pending. This alone suffices to answer the claim of usurpation of judicial power.

 The presumption is in favor of the validity of an Act of Congress and that Act should have great weight.

It is concluded that the Portal-to-Portal Act enacted May 14, 1947, is constitutional. The plaintiffs are permitted 20 days from the date of the service of this opinion and an order thereon in which to amend their complaints so as to set up a cause of action with the requirements of the Portal-to-Portal law and in the event of their failure to so amend, these motions to dismiss are granted.