**HAMPTON ROADS STEVEDORING COR-
PORATION v. O'HEARNE.**

No. 6091.

United States Court of Appeals
Fourth Circuit.

Argued June 28, 1950.

Decided Aug. 7, 1950.

Leon T. Seawell, Norfolk, Va., for appellant and cross-appellee.

Herbert P. Miller, Assistant Chief Counsel, Bureau of Employee's Compensation, Washington, D. C. (George R. Hummrickhouse, U. S. Atty., Richmond, Va., John P. Harper, Asst. U. S. Atty., Norfolk, Va., and Ward E. Boote, Assistant Solicitor, Department of Labor, Employees' Compensation Division, Washington, D. C., on brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and GILLIAM, District Judge.

GILLIAM, District Judge.

Vivian Joyner was a longshoreman employed by the Hampton Roads Stevedoring Corp., and while engaged for his employer in storing cargo in the hold of the S.S. Wisconsin sustained personal injury which allegedly resulted in his death. The injury was sustained on June 15, 1948, and the death occurred on July 17, 1948.

The surviving widow made claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act, U.S.C.A. 33, §§ 901-950, and the Deputy Commissioner for the Fifth Compensation District, Norfolk, Virginia, found as a fact that the death of Vivian Joyner resulted from the accidental injury received and awarded compensation as provided under the amendment to the act which became effective on June 24, 1948—after the injury and before the death—and under which amendment the allowable funeral benefit was increased and the limitation of the total amount payable in death cases was removed. A petition was filed in the District Court for the Eastern District of Virginia, and upon the hearing the District Court upheld the Commissioner as to the award of compensation, but reversed him as to the applicability of the amendment of June 24, 1948, holding that the act in effect on the date of the injury, that is, June 15, 1948, rather than the act in effect on the date of the death, that is, July 17, 1948, applied.

The Commissioner's finding is: "The deceased employee * * * sustained personal injury resulting in his death, when, while lifting a piece of freight, he struck his head against a deck beam, which resulted in a sub-dural hematoma or precipitated a cerebral thrombosis, terminating in his death on July 17, 1948." There appears to be no serious contention, certainly such is not justified, that the deceased did not "strike his head against a deck beam"; though it is seriously contended, and not without ground, that there is no substantial evidence to support the finding that the blow "resulted in a sub-dural hematoma or precipitated a cerebral thrombosis terminating in his death * * *." This Court is of the opinion and holds that there is substantial evidence in the record to support this finding. This evidence may be summarized as follows: Deceased struck his head on the top of the vessel when raising up with an article of freight and another workman immediately came and took his place; when he hit his head he fell and was picked up; when talked to he did not have much to say and he was then carried up on deck; a suggestion was made to get a doctor, his condition appeared to be serious and the boss directed that he be sent to a hospital; he had not complained of feeling bad that day before the accident, and at breakfast that morning he and his nephew joked and discussed Jackie Robinson, Brooklyn's second baseman; though deceased had neurosyphilis he appeared to be in good health and showed no disability from this disease; he became progressively worse after the accident, and on July 10, 1948, his condition was such that a doctor thought it advisable to make an exploratory opening in his head to see if a clot of blood might be present; in accordance with the doctor's idea, arrangements were made to have such exploratory operation performed, but the wife of the deceased would not permit it. The condition of the deceased continued thereafter to grow gradually worse until he died, thirty-two days after the injury, and during all of that time deceased continued under disability. One of the doctors who saw deceased testified: "We found in examination that he had neuro-syphilis, and it was a question of whether he had a

78

cerebral thrombosis due to his syphilis or whether he had a sub-dural hematoma due to a head injury; * * * (the blow on the head) could cause either one (either a cerebral thrombosis or a sub-dural hematoma); * * * I think it is a fact that a crack on the head will shake up symptoms of a latent syphilis that was not doing any harm before."

■ We are not called upon to say whether or not the blow caused the death, but only whether there is substantial evidence to uphold the finding of the Commissioner that such is true. Another may have reached a contrary conclusion, it may be that a contrary conclusion may have been more reasonable, though we do not so imply; but according to our view there is substantial evidence tending to show that the blow either was the sole cause of the death or that it combined with the previously existing condition of the deceased to hasten his death. Under the authorities, recovery is allowed if the injury concurs with a disease to cause disability or death. In the case of Southern Stevedoring Co. v. Henderson, 5 Cir., 175 F.2d 863, 866, an award was upheld where it appeared that the deceased, who was suffering with a bad heart, died as a result of climbing a ladder. In the opinion in that case it is said: "Since there was evidence before the commissioner that the climbing of the ladder superimposed upon the defendant's heart a condition that hastened his death, and since to hasten one's death is to cause it, we turn at once to the issue as to the accidental character of the injury." There are other cases to this effect.

■ It is true that there is no positive expert medical testimony to establish the finding that the injury caused the death, but such is not required by the law. In Jarka Corp. of Philadelphia v. Norton, Deputy Commissioner, D. C., 56 F.2d 287, 288, the Court said: "I am unwilling to hold that a claimant, in order to establish a case for compensation, must produce expert medical testimony to substantiate his claim, where it is proven that he sustained a fracture of the back and is now unable to

work, and where the disability, not having existed before the injury has been more or less continuous since the injury. I am also unwilling to hold that the Commissioner is bound to accept the opinion of a medical expert for a respondent merely because uncontradicted."

■ In fact, where there is medical opinion that the death is not related to the injury, the circumstances may outweigh the physician's express opinion.

In Utah Delaware Mining Co. v. Industrial Comm., 76 Utah 187, 289 P. 94, 99, that Court said: "Notwithstanding the opinion expressed by the attending physician—it was but an opinion—that he saw no connection between the present disabilities of the applicant and the injuries sustained by him at the time of the accident, nevertheless the commission had before it sufficient evidence to justify the finding that the disabilities were attributable to the accident." In this case there was no medical expert evidence in conflict with the finding of the Deputy Commissioner—in fact, the doctors said they could not express an opinion.

In Liberty Mutual Insurance Co. v. Marshall, Deputy Commissioner, D. C., 57 F. Supp. 177, 178, it is said in sustaining an award: "I have taken the time necessary to carefully consider all of the authorities that Counsel have collected and exhaustively reviewed in their oral arguments before the Court. The great weight of Federal Court authority is to the effect that, even where all the medical testimony is all one way, the Deputy Commissioner is not bound by such medical testimony if there is other competent testimony requiring a finding different from that indicated by the medical testimony." For this position that Court cited several cases and the law in this respect seems well settled.

■ The question involved in the cross-appeal of the Deputy Commissioner must be decided in his favor as the Court is of the opinion and holds that the provisions of the amendment which became effective on June 24, 1948, which was subsequent to the injury but prior to the death, are ap-

plicable. Section 6 of the amendment of June 24, 1948, 33 U.S.C.A. § 906, note, provides: "The provisions of this Act shall be applicable only to injuries or deaths occurring on or after the effective date hereof." The District Judge was of the opinion that "the words used in the statute 'injuries or deaths' as affected by the limitation have the same meaning" and stated: "The act provides compensation in event of either injury or death, and where the death occurs subsequently to the date of injury the rights of the parties were fixed as of the date of the injury." It might be conceded that if "the rights of the parties were fixed as of the date of the injury" the ruling of the District Court would be correct, but this premise does not appear to be sound. In the first place, as stated in cross-appellant's brief, "the words 'or deaths' would be superfluous if they are to be given the same meaning as the word 'injuries' which precedes them." There is no reason to suppose that the words "or deaths" were inserted without purpose. On the other hand, if Congress did intend to make the amendment applicable to deaths occurring thereafter, regardless of the date of the injury, the question comes to mind: what words might have been employed to more clearly express such intention.

■ It is to be borne in mind that, as construed by the Courts in several cases the act gives two separate rights, one relating to compensation for injury payable to the injured employee, and the other relating to death benefits payable to the dependents. When death occurs, a new cause of action arises. This is the express holding of the Second Circuit in International Mercantile Marine Co. v. Lowe, Deputy Commissioner, 93 F.2d 663, 115 A.L.R. 896. In that case a longshoreman was paid disability benefits in an amount more than $6,000, and when he died as a result of his injuries his widow was awarded benefits up to $7,500, though a section of the act provided that "the total compensation payable under this chapter for injury or death shall in no event exceed the sum of $7,500." In upholding the award the Court said in its opinion at page 664 of 93 F.2d: "It

is appellant's contention that the two rights, one for compensation for injury and one for death ensuing, must be combined, and that the maximum allowance for both shall not exceed $7,500. But the disability benefits fixed by section 8 of the act and the right of the widow to death benefits under section 9 are different. They have different claimants thereto; one arising in the event of injury not resulting in death and the other arising only in the event of death. They were separately provided for by separate sections of the act and accrue on different bases. The amount to which the widow or next of kin is entitled is for their exclusive benefit and is entirely separate and distinct from the compensation for disability allowed the employee. The amount is in no way affected by the fact that the employee received compensation for disability up to the time of his death. As used in Section 14(m) the word 'or' is a disjunctive particle signifying an alternative. The phrase 'for injury or death,' as used, means that the $7,500 thereunder limits separately the amount of compensation which may be paid for disability and the amount which may be paid for death. * * * The one right cannot defeat the other. The separation of the awards in the statute indicates that Congress intended this purpose. Section 9 is entitled 'Compensation for death,' and says: 'If the injury causes death, the compensation should be known as a death benefit and shall be payable in the amount and to or for the benefit of the persons following.' And Section 8(a) plainly provides for the right to compensation in case of disability. When death occurs, a new cause of action arises which requires an adjudication on all questions such as accident, notice of death, claim, causal relationship, and dependency." The principle announced in the case just quoted from is also announced in other cases, such as Hitt v. Cardillo, Deputy Commissioner, 76 U.S.App.D.C. 334, 131 F.2d 233, and Norton, Deputy Commissioner v. Travelers Insurance Co., 3 Cir., 105 F.2d 122.

While, of course, the question decided in the cases just referred to is not identical

with the question here, these cases do definitely hold that the cause of action arising from death is separate and distinct from the cause of action arising from injury. It appears sensible and logical to say that the law in effect on the date when the cause accrues is the applicable law, especially in view of the provision of the amendment that it shall be applicable to "deaths occurring on or after the effective date hereof."

Similar amendments to laws of somewhat different nature have been construed to apply where the injury occurred before, but the death occurred after the amendment, even in the absence of an express direction making it applicable to deaths occurring thereafter. Donoho v. Atlantic Basin Iron Works, 210 App.Div. 535, 206 N.Y.S. 494; Kunst v. General Bronz Corp., 264 App.Div. 494, 35 N.Y.S.2d 878; Moore v. Troop D, 267 App.Div. 466, 47 N.Y.S.2d 27; and Warner v. Zaiser, 184 Minn. 598, 239 N.W. 761, 762. In the case last cited, the Court said: "The obligations and rights of the parties as to weekly compensation and other benefits to the employee do become fixed at the date of a compensable accident; as to benefits and liabilities arising because of the employee's death, they become fixed at the time of death. The Legislature may change the scale of weekly or other benefits prior to the occurence of the accident; it may change the benefits to be received by the widow of any employee prior to the death."

In the case of Moore v. Troop D, above, the opinion contains this statement: "The rights of the parties arising from the death of an injured workman are fixed as of the date of death. The right to death benefits springs into existence at that time and the law which must control the compensation to be paid is that which was in effect when the right came into existence." [47 N.Y.S.2d 28]

Our conclusion does not amount to giving retroactive effect to the amendment and is not, therefore, in conflict with many of the cases cited by the cross-appellee. We find nothing in any of the cases cited by the cross-appellee, with the possible exception of Thorpe v. Dept. of Labor et al., 145

Wash. 498, 261 P. 85, which is inconsist. .ιc with the conclusion we have reached. For instance, in the case of Arizona & N. M. Railway Co. v. Clark, 9 Cir., 207 F. 817, 825, the Court said: "The statute of Arizona entitled 'An Act Securing Compensation for Injuries * * *' having been passed long subsequent to plaintiff's injuries, has no application to the case." If that were our case the contrary contention would be rejected with a simple statement, as it seems to have been rejected in that case. The statute here (the amendment) became effective before death, before the right for death benefits accrued on July 17, 1948, and by the specific wording of the amendment it is applicable to "deaths occurring on or after" June 24, 1948.

Cross-appellee also cites Riggs v. Lehigh Portland Cement Co., 76 Ind.App. 308, 131 N.E. 231, 232, and quotes from the opinion as follows: "It is the duty of the Industrial Board, when making its award, to fix the rights of the parties in accordance with the law as it existed at the time of the injury to the workman. * * * We are of the opinion that the rights of all concerned were fixed by the act under which the award was made, and may not be modified by subsequent legislation. If the Legislature may increase awards, it may also decrease awards." An examination of the facts in the Riggs case shows a situation very different from ours. There an award had been made for death benefits to the widow and one child, the death having occurred on the very day of the injury. Under the statute in force on the date of the death, all payments under the award ceased upon the remarriage of the widow, but later the law was amended to provide that payments only to the widow would cease upon her remarriage, but that the payments to the child or children should continue. The question arose in that case upon the remarriage of the widow whether payments to the child should continue, and the Court said that they should not because the rights of the parties were fixed by the act under which the award was made, and that subsequent

legislation did not modify these rights. But here the question is whether an act passed before the award is made and before the accrual of the right shall apply. It is not whether rights already fixed under the law are to be modified, but under what law are these rights to be fixed.

Assuming that the holding in the case of Thorpe v. Dept. of Labor, 145 Wash. 498, 261 P. 85, or in any of the other cases cited, is contrary to the conclusion which we have reached, this Court does not feel that they should be followed in this case, but will follow the decisions in the other cases referred to, the reasoning therein set out, and what appears to be a reasonable and logical interpretation of the amendment when applied to the particular facts in this case.

Our decision in this respect, we think, is in line with the policy of the law to give a liberal interpretation to the provisions of this act, as set out in Baltimore & Philadelphia Steamboat Co. v. Norton, Deputy Commissioner, 284 U.S. 408, 414, 52 S.Ct. 187, 189, 76 L.Ed. 366: "The measure before us, like recent similar legislation in many states, requires employers to make payment for the relief of employees and their dependents who sustain loss as a result of personal injuries and deaths occurring in the course of the work, whether with or without fault attributable to the employer. Such laws operate to relieve persons suffering such misfortunes of a part of the burden, and to distribute it to the industries and mediately to those served by them. They are deemed to be in the public interest and should be construed liberally in furtherance of the purpose for which they were enacted and, if possible, so as to avoid incongruous or harsh results."

The judgment of the District Court in upholding the finding of the Deputy Commissioner that the death of the employee was caused by the injury is affirmed and that Court's judgment in applying the act in effect at the time of the injury rather than at the time of the death is reversed; and the case is remanded for judgment in accordance with this opinion.

Affirmed in part; reversed in part.