**Harrison ENNIS, Appellant,**

v.

**Stephen O'HEARNE, Deputy Commissioner, Fourth Compensation District, and Patapsco Ship Ceiling and Stevedore Company and The Travelers Insurance Company, Appellees.**

No. 6947.

United States Court of Appeals Fourth Circuit.

Argued April 15, 1955.

Decided June 13, 1955.

Duke Avnet, Baltimore, Md. (Albert Avnet and Theodore C. Denick, Baltimore, Md., on brief), for appellant.

Joseph H. Young, Baltimore, Md. (Piper & Marbury and Michael P. Crocker, Baltimore, Md., on brief), for appellees, Patapsco Ship Ceiling and Stevedore Company and The Travelers Insurance Company.

**756**

Herbert P. Miller, Atty., U. S. Department of Labor, Washington, D. C. (George Cochran Doub, U. S. Atty., James H. Langrall, Asst. U. S. Atty., Baltimore, Md., Stuart Rothman, Solicitor of Labor, and Ward E. Boote, Asst. Solicitor, Washington, D. C., on brief), for appellee Stephen O'Hearne.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal by the claimant from an order of the United States District Court for the District of Maryland, affirming an order of the Deputy Commissioner which rejected a claim for permanent partial disability compensation made under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. Chapter 18, § 901, by Harrison Ennis (hereinafter called Ennis) for an injury received by Ennis while working as a stevedore for the Patapsco Ship Ceiling and Stevedoring Company. The only question raised by this appeal is whether the finding of the Deputy Commissioner that Ennis made an uneventful recovery from his injury is supported by the record.

On February 1, 1952, Ennis twisted his back when he turned to grab hold of a ship's ladder to prevent his falling while he was at work as a stevedore in the hold of the S.S.C.G. Thelin. Ennis has not worked since that time. He complained of pains in his back, and his employer and its insurance carrier paid him compensation for temporary total disability up until June 21, 1953. Ennis filed a claim for permanent partial disability compensation with the Deputy Commissioner who found as a fact that Ennis recovered from the effects of his injury prior to June 21, 1953, and denied the claim.

The evidence before the Deputy Commissioner consisted of the oral testimony of Ennis and the written medical reports of several doctors who examined Ennis; the first of these reports stems

from an examination made on May 20, 1952, by Dr. George Eaton of Baltimore, to whom Ennis was referred at the instance of his employer by Dr. Little who had been treating Ennis since his injury. The following is the report of an X-ray examination of Ennis and the opinion of Dr. Eaton:

"X-ray examination of the lumbosacral spine reveals a second degree spondylolisthesis of L4 on L5 with a sacralized fifth lumbar with a spina bifida at the top of the sacrum.

"Opinion: The displacement is of a considerable degree. In view of the history which presumes a mild type of sprain one would feel that the condition may have been present before the date of injury January, 1952. However, the patient gives no history of disability or complaints previous to that date so that the injury of January, 1952 must be considered at least a contributing cause. Treatment of this case calls for the use of a back brace or operation to stabilize the lower lumbar spine."

A brace was prescribed but Ennis refused to wear it, saying that it hurt him to do so. On September 29, 1952, Dr. Sheldon Eastland of Baltimore made a general examination of Ennis, concluding that he was in good condition for surgery but expressing no opinion concerning the back injury other than a reference to Dr. Eaton's report.

On December 13, 1952, Dr. Walter Wise examined Ennis for the removal of a hernia which would interfere with his wearing a brace; Dr. Wise removed the hernia on January 9, 1953. Dr. Milton Wilder examined Ennis on March 26, 1953, and found and gave as his opinion, the following:

"Back: There is a list to the left. Flexion of spine is limited and productive of pain over lumbo sacral spine. Bending to the right and to the left is moderately limited and.

productive of pain over the same area.

\* \* \* \* \*

"Impression: It is difficult to determine when this slipping occurred. It will be necessary to have X-rays at the time of the injury to be certain. However, either this was caused by the injury or the injury aggravated this condition."

On July 9, 1953, Dr. Eaton re-examined Ennis and stated as his opinion:

"I am impressed with the psychiatric examination report on this patient and do not question the conclution. However, the patient does have a demonstrable second degree spondylolisthesis and has a complaint of pain at the site of the spondylolisthesis, and inability to work. This spondylolisthesis is in all probability not due to his injury of January, 1952, but presumably would be aggravated by that injury.

"It is my opinion that the patient will not ever return to heavy manual labor and that his case should be finalized. I would estimate that the permanent disability which could be considered as due to his injury of January, 1952 would amount to 20% loss of earning power."

On July 30, 1953, Dr. Wilder examined Ennis again and stated in his report:

"Still complaining of pain over back. Has not been able to work since injury.

"P. E. Back: There is a list to the left. Flexion of the spine is limited and productive of pain over lumbo sacral spine. Bending to the right and left is moderately limited and productive of pain over same area. Gets up and down with difficulty.

"Opinion:

"In my opinion this patient is sincere and is not compensated minded as indicated in the two reports from the Marine Hospital. He certainly does not attempt to exaggerate his complaints or findings. His work record is good and it is my belief that he would return to work if able to do so.

"Disability evaluation: 20% permanent disability of the back."

Hearings were held before the Deputy Commissioner on September 14 and November 9, 1953. At the conclusion of the first hearing, the Deputy Commissioner instructed the insurance carrier to have Ennis examined by a psychiatrist. Dr. O. R. Langworthy made such an examination, and his report dated October 12, 1953, concluded:

"Examination revealed a large frame, well developed Negro, who looks younger than his stated age. There is an arcus senilis. The pupils are large and react normally. The cranial nerves are all normal. There is a good deal of pyorihea. In regard to his gait, he walked well down the hall and when examined tended to walk slowly. He holds his shoulders pulled far back so there is a marked median fold in his back. The muscles of the back seem under no tension. He bends the back quite freely in all directions without pain but does seem to be uncomfortable in hyperextension. There appears to be no real pain on percussion over the back or pressure in the sacro-iliac region. No pain or pressure over nerves or muscles. Straight leg raising does not seem to be limited in any way. There is no atrophy of muscles. Deep reflexes are active and normal on both sides. No abnormal reflexes are found, no sensory abnormalities could be made out.

"The patient's attitude appears to be that he has worked a long time and should receive compensation for a considerable period. It would be my feeling that he is less than 10% disabled from a physical point of view. Most of his difficulties are emotional. I would call this a compensation neurosis. I found little evidence of tension or anxiety."

It is well settled that the Deputy Commissioner's finding is not to be disturbed if it is supported by substantial evidence in the record. *O'Loughlin v. Parker*, 4 Cir., 163 F.2d 1011; *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028. Moreover, any logical inference or deduction drawn from the evidence by the Deputy Commissioner must be taken as a fact and cannot be reviewed. See *Contractors v. Pillsbury*, 9 Cir., 150 F.2d 310; *O'Leary v. Brown-Pacific-Macon*, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; *Cardillo v. Liberty Mutual*, supra.

The record before us does not reveal evidence showing or tending to show that Ennis had made an uneventful recovery from his injury prior to June 21, 1953. The report of Dr. Langworthy does not directly suggest such a conclusion since he states that Ennis probably was less than 10% permanently disabled from a physical standpoint. This is not a statement that no disability exists nor does it permit of a logical inference that no disability exists. Presumably, if Ennis were suffering from no permanent physical disability, Dr. Langworthy would have so stated.

This is not a case where two permissible inferences exist and the Deputy Commissioner relied upon one rather than the other. Only one logical inference is permissible from Dr. Langworthy's statement: that Ennis was suffering some small percentage of permanent disability. Such an inference alone can form no basis for a finding that no disability exists. It is the antithesis of such a finding. All the other medical testimony bearing on the question of physical disability indicates that Ennis is suffering under a permanent partial disability due to the twisting of his back.

Counsel for the Deputy Commissioner quite properly points out that the Deputy Commissioner is permitted to disregard medical testimony and rely upon his own observation of Ennis and other evidence before him in making his decision. See *Hampton Roads Stevedoring Corp. v. O'Hearne*, 4 Cir., 184 F.2d 76; *Crescent Wharf & Warehouse Co. v. Cyr*, 9 Cir., 200 F.2d 633; *Green v. Crowell*, 5 Cir., 69 F.2d 762.

The Deputy Commissioner's counsel misapplies the rule, however. In this case there is no evidence in the record other than the medical reports and the oral testimony of Ennis, all tending to support his claim. In these circumstances, the Deputy Commissioner must have disregarded *all* the evidence if he based his decision on his observation of Ennis. We express no opinion on the value of such a decision or whether we would uphold such a decision if the Deputy Commissioner had stated in his order that he was disregarding all the evidence and relying solely on his observation of the claimant, describing what observation formed the basis of his decision. We cannot affirm such an order, however, where the Deputy Commissioner has not stated that his personal observation formed the basis of his decision when the decision is contrary to the record evidence.

The statement of Dr. Langworthy that Ennis had a compensation neurosis might have led the Deputy Commissioner to disregard the medical reports. It might be that Ennis exaggerated his injuries before Dr. Langworthy and convinced the doctor that Ennis was a malingerer. This, however, is not inconsistent with the fact that Ennis had not recovered from his injuries and was still partially disabled. We cannot presume that the Deputy Commissioner disregarded the medical reports, in the absence of some statement to that effect, but can only hold that on the record presented to us there is no substantial evidentiary basis for his finding and that he erred in making his finding.

Judicial review of a Deputy Commissioner's findings would be meaningless if, in every case where the evidence does not support his rulings, we are bound to accept the contention of counsel that the Deputy Commissioner disregarded the adverse evidence and relied on his personal observation as the sole basis for his decision, no evidence of such a basis

for his decision appearing in his order. If no record evidence exists to support the Deputy Commissioner's finding, then his finding must affirmatively show that he disregarded the evidence contrary to his decision, and based his decision on his personal observations, noting what those observations were.

It is regrettable that the medical issues in this case were tried on mere written statements from the doctors who examined Ennis. The ends of justice would certainly have been more efficiently served if the doctors had testified in person, subjecting themselves to direct examination and cross-examination.

The decision of the District Court affirming the order of the Deputy Commissioner is reversed and the case is remanded to the District Court with directions to send the case back to the Deputy Commissioner for a new hearing, with leave to the parties to introduce new evidence, if they so desire.

Reversed and remanded.

SOPER, Circuit Judge (concurring in part).

The conclusion of the court, as appears from the foregoing discussion, that there was no evidence to support the finding of the Deputy Commissioner that the complainant had recovered from his injury, is based on the failure of Dr. Langworthy to say that the claimant was not suffering from a permanent physical disability after the accident. This omission, however, does not justify the court's conclusion because the evidence showed that prior to the injury the claimant was suffering from a congenital spondylolisthesis of the vertebrae which inhibited free movement of his back. Moreover, it was found that the claimant definitely refused surgery for his back condition; that he refused to wear a back brace furnished him on prescription of an orthopedic specialist; and that he refused to seek any kind of employment. It follows that Dr. Langworthy's opinion that the disability after the injury was less than ten per cent., coupled with his finding that the man was a malingerer, and with

the information gained by the Deputy Commissioner in his own examination, were enough to justify the latter's general finding that the claimant's physical condition was as good after as before the injury. The Commissioner's finding in this respect might have been more specific, and hence I concur in the direction that the case be returned to him for further proceedings.