591 F.2d 985
 PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Petitioner,
v.
Louise E. SPENCE (widow of James T. Spence) and Terminal
Shipping Company and Director, Office of Workers'
Compensation Programs, United States
Department of Labor, Respondents.
 No. 78-1088.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 5, 1978.
Decided Jan. 25, 1979.
 
 Louis G. Close, Jr., Baltimore, Md. (Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., on brief), for petitioner.
 Josua T. Gillelan, II, U. S. Department of Labor, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Linda L. Carroll, U. S. Dept. of Labor, Washington, D. C., on brief), for Director, Office of Workers' Compensation Programs.
 A. Owen Hennegan, Towson, Md., for respondent Terminal Shipping Co.
 I. Marshall Seidler, Baltimore, Md., for respondent Louise E. Spence.
 Before WINTER, RUSSELL and WIDENER, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This appeal presents a controversy between an employer and its insurance carrier over which is liable for death benefits payable under the 1972 Amendments of the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. § 901, Et seq.
 
 
 2
 The facts generating this controversy are not in dispute. On March 24, 1967, the employee, on account of whose death these benefits were claimed, suffered an injury on a vessel in navigable waters in the course of his employment by Terminal Shipping Company. This injury resulted in a compensation award for total and permanent disability under the Act. On November 11, 1973, over six years later, the employee died from causes unrelated to his injury, while he was receiving from the petitioner his compensation benefits as previously awarded him.
 
 
 3
 At the time of his injury, the employer's insurance carrier was the petitioner Pennsylvania National Mutual Casualty Insurance Company and it remained as such until the policy was terminated on or about February 1, 1971. On January 1, 1970, the employer Terminal Shipping Company was acquired by Atlantic and Gulf Stevedores, Inc. The latter became a self-insurer, as permitted under § 935, 33 U.S.C., after the termination of the Pennsylvania National's insurance policy.
 
 
 4
 Following the employee's death, the widow filed for death benefits under the Act. There is agreement between the parties at this stage of the proceedings that there is liability for death benefits under § 909, as amended in 1972, a point conclusively established in N., B. & C. Lines v. Director, Office of W.C.P. (4th Cir. 1976) 539 F.2d 378, Cert. denied 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798.[1] The single question on appeal is whether the petitioner Pennsylvania National Mutual Casualty Insurance Company as the employer's insurance carrier at the time of the deceased's injury is also liable for the death benefits due on account of the death of the employee in 1973 or whether the liability is solely that of the Atlantic and Gulf Stevedores, Inc. as successor to the Terminal Shipping Company.[2] The administrative law judge to whom the matter was referred found that the petitioner insurance carrier was liable both for death benefits and for a penalty award under § 914(e), 33 U.S.C. On appeal, the Benefits Review Board affirmed and the petitioner in due course has filed a petition for review of the decision of the Benefits Review Board under the terms of § 921(c), 33 U.S.C.[3] We dismiss the petition and affirm the decision of the Benefits Review Board.
 
 
 5
 The argument of the insurance carrier for nonliability begins with the contention that, under Hampton Roads Stevedoring Corp. v. O'Hearne (4th Cir. 1950) 184 F.2d 76, the liability for death benefits under the Act is a separate and distinct right of action from that for disability compensation and arises only at the time of the death of the employee. From this premise it argues that it could not be held liable for any right of action for death benefits which only arose after its policy had been terminated. This is particularly so, it adds, because the liability for death benefits was substantially enlarged over those existing at the time of the employee's injury and at the time its policy was terminated, by the 1972 Amendments to the Act, which make such benefits payable even if death of the employee were unrelated to the compensable injury. On the basis of this argument, the insurance carrier contends the Benefits Review Board erred in holding it liable for death benefits in this case in which the employee's death and the consequent right of action for death benefits only arose in 1973 after its policy had been terminated in 1971.
 
 
 6
 The Act does provide, as the carrier urges, for two separate rights and types of recovery, the beneficiaries of which are different. One embraces the compensation payable to the disabled employee by way of disability benefits; the other represents death benefits payable to certain statutorily designated beneficiaries. But both types of recovery derive their basis from the same event, I. e., the employee's injury. It is that event which gives both a right to compensation payments under § 908 and a right to death benefits under § 909. Neither right of action, whether for compensation payments or for death benefits, exists apart from the critical fact of injury; each is dependent for its basis on the injury. It is inaccurate, therefore, to state that the right to the death benefits has its origin solely in the event of death; the real source of the liability for such benefits under the Act traces directly back to the injury itself.
 
 
 7
 The petitioner accepts this reasoning so far as it represents a basis for finding liability on the part of the employer. It thus concedes that the employer is liable, even though death occurred long after the employee had ceased to work for the employer and even though the death benefits had been increased between the time of injury and the time of death by the 1972 Amendments. In making such concession, however, it overlooks the fact that when it became the employer's insurance carrier, it put itself in the place of the employer so far as compensation benefits under the Act, whether for disability or for death, were concerned. That is the necessary construction of § 935, 33 U.S.C. Accordingly, when it is admitted that the petitioner was the employer's insurance carrier under § 935 at the time of the employee's injury in 1967, it necessarily follows that the petitioner carrier is subject to all liabilities attaching to the employer on account of the injury, both by way of compensation payments to the employee and by way of death benefits in favor of the statutory beneficiaries under § 909. It is immaterial to its liability for death benefits arising out of the injury in 1967 that its policy was later terminated in 1971. Just as the employer remained liable for the death benefits, even though death occurred after the employee ceased to work for the employer, so did the liability of the insurance carrier under its policy in favor of the employee continue for death benefits originating in the injury occurring when it was the employer's compensation carrier, even though it thereafter ceased to be the employer's carrier. That was the petitioner carrier's agreement under its policy. The Benefits Review Board, in holding that the petitioner carrier was liable for the death benefits in this case was merely enforcing the obligation which the petitioner had assumed when it issued its compensation insurance policy.
 
 
 8
 It is too late to argue, as does the petitioner insurance carrier, that the enlargement of liability for insurance benefits by the 1972 Amendments is either illegal or unjust. Those issues were examined and decided adversely to the petitioner's contention in N., B. & C. Lines v. Director, Office of W. C. P., supra, 539 F.2d at 380-381. In that decision, it was pointed out (1) that death benefits were allowable under the Act long prior to the 1972 Amendments and (2) that such benefits could be validly increased by Congress after the injury and before death. Hampton Roads Stevedoring Corp., supra 184 F.2d at 78, the very authority on which the petitioner pins its argument, had decided that almost thirty years ago. Nor can the action of Congress in increasing such benefits by the 1972 Amendments be assailed on constitutional grounds or on grounds of fairness because "the employer and The insurer may have believed they had contractual rights in the limitation of benefits called for by the Act when, prior to 1972, they assumed these obligations."[4] (Italics added) Any claim of unfairness in holding an insurance carrier liable years afterwards for death benefits based on a finding of injury during the period of the carrier's policy is no more appealing than would be the claim of the employer to be relieved of a liability that only becomes compensable years after the employee has left its employment. The petitioner insurance carrier finds no merit in the claim of the employer for relief. By the same token, its own claim of immunity lacks appeal. The liability of the petitioner insurance carrier for the death benefits is plain.
 
 
 9
 It might not be amiss to comment that, in asserting a right to immunity for a liability arising out of an injury occurring during its coverage as against its own insured, the petitioner is assuming a position unlike that taken in any reported cases by any insurance carrier under the 1972 Amendments. In Nacirema Operating Co. v. Lynn (3d Cir. 1978) 577 F.2d 852, and State Ins. Fund v. Pesce (2d Cir. 1977) 548 F.2d 1112, both of which follow Norfolk, Baltimore and Carolina Lines, Inc., the carrier stood with the employer, recognizing that, so far as death benefits under the 1972 Amendments, it took the place of the employer under its policy and assumed the employer's liability.
 
 
 10
 The petitioner insurance carrier has, also, challenged the penalty imposed on it under § 914(e), 33 U.S.C. The finding, however, is amply supported in the record and may not be disturbed.
 
 
 11
 The petition for review will be denied and the order of the Benefits Review Board will be affirmed.
 
 WIDENER, Circuit Judge, dissenting:
 
 12
 I respectfully dissent.
 
 
 13
 I would relieve the prior insurer of liability for compensating an entirely new class of claims which were only created by statute after its insurance contract with the now self-insuring employer had terminated.
 
 
 14
 On March 24, 1967, James T. Spence was permanently and totally disabled by an injury in the course of his employment with Terminal Shipping Co. (Terminal), and received compensation for this injury under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 908(a). The petitioner, Pennsylvania National Mutual Casualty Insurance Co. (Pennsylvania National) was Terminal's insurer on March 24, 1967, and pursuant to the insurance contract, Pennsylvania National paid Spence's disability benefits until his death on November 11, 1973. In the period between Spence's injury and his death, however, several significant events occurred. On January 1, 1970, Terminal was acquired by Atlantic and Gulf Stevedores, Inc. (Atlantic), which assumed all liabilities of Terminal. On February 1, 1971, Pennsylvania National's coverage of Terminal expired and Atlantic became the self-insurer of its new purchase. On November 26, 1972, more than a year and a half after Pennsylvania's coverage ceased, 33 U.S.C. § 909 was amended to provide death benefits to employees who were permanently and totally disabled in the course of their employment but whose death was not caused by the disabling injury. Prior to the date of this amendment, § 909 provided death benefits only when death was caused by the disabling injury. It is undisputed that Spence's death in November 1973 resulted from causes unrelated to his earlier injuries, and thus his statutory beneficiaries were eligible for death benefits under the 1972 amendment.
 
 
 15
 The issue presented in this case is whether an insurance company should be forced to pay for benefits not in existence until after the date its coverage has ended. The majority answers this question in the affirmative, and gives two reasons for its decision. First, the court appears to reject Pennsylvania National's argument that the cause of action for death benefits arises at the time of death. Second, the majority sees no distinction between the employer and the insured, and, therefore, since the employer is liable for the newly created benefits, the insurance company also is liable.
 
 
 16
 In support of its first argument, the majority notes that while the Act provides for two types of recovery compensation for disability and death benefits, both awards "derive their basis from the same event" the initial injury. I cannot agree. First, as a matter of logic, a cause of action cannot accrue under § 909 (death benefits) until the employee dies. Of course, one of the requirements for recovering death benefits is a prior permanently and totally disabling injury, but I do not think a prerequisite for recovery can be said to give rise to a cause of action for death benefits before death has occurred. Second, if the majority is in fact rejecting the two causes of action theory, it declines to follow circuit precedent established in Hampton Stevedoring Corp. v. O'Hearne, 184 F.2d 76, 79 (4th Cir. 1950). In Hampton, we clearly held that the death benefit was a new and distinct cause of action from the injury benefit, and our decision on this point has been followed in State Ins. Fund v. Pesce, 548 F.2d 1112 (2d Cir. 1977). The precise issue in Hampton was whether the injury and death benefits would be considered separately or together in determining the maximum award available under the Act. This issue admittedly is somewhat different than the one before us today, but I do not believe this provides a basis for distinguishing the holding in Hampton, that death benefits create a separate cause of action for a different beneficiary.
 
 
 17
 The fact that two causes of action exist, however, does not mean that a prior insurer can avoid all death benefits once its contract is terminated. All benefits in effect during the term of coverage are the responsibility of the insurer, and so would any increase in benefits enacted after the insurer went off the risk. Long range payments under existing law and subsequent increases clearly are within the foreseeable coverage of an insurer under the Act. In the case at bar, however, we are not faced with a benefit which existed during the time of coverage or any increase in the amount of these benefits. In amending § 909, Congress created an entirely new death benefit for employees who were totally disabled on the job but died from causes unrelated to the injury.
 
 
 18
 In support of its argument that the 1972 amendment was only an increase in benefits, the majority cites N., B. & C. Lines v. Director, Office of Workers' Compensation Programs, 539 F.2d 378, 381 (4th Cir. 1976). Certain language in that opinion does support the majority's position, but the issue in that case was the constitutionality of the 1972 amendment. The court held that the amendment was not outside the admiralty jurisdiction, or so vague, or so harsh by retroactivity as to be constitutionally invalid. In support of this result, it noted that death benefits were recoverable before 1972, and thus expanding the causal clause to confer death benefits when death was unrelated to the job injury was not a "novel or radical concept." 539 F.2d at 381. While I acknowledge the holding that the expansion of death benefits by the 1972 amendment is not unconstitutional, I cannot accept the conclusion that this change in the law was only an increase in existing benefits. The amendment covers an entirely new class of claimants, survivors of injured longshoremen who die for any reason unrelated to their injury. Since everyone must die sometime, the class, then, is simply the statutory beneficiary of every longshoreman who has suffered permanent and total disability. The only authority cited by the court in N., B. & C. Lines for the proposition that the 1972 amendment was only an increase in benefits was Hampton, supra. In Hampton, however, the change in benefits was an increase in payments for funeral expenses and a removal of the maximum award payable. Both benefits were already covered by the Act, only the amounts were changed.
 
 
 19
 The majority provides further support for its holding by noting that the petitioner does not contest the fact that the employer is liable for the death benefits. It apparently takes this as some kind of an admission of liability by the prior insurer, and reasons that by entering into an insurance contract the insurer places itself in the shoes of the company. Since the employer remains liable for death benefits after the employee leaves his job, the argument goes, the insurance company remains liable after its contract expires. I cannot agree.
 
 
 20
 As discussed above, I do not believe that this insurer should be forced to pay benefits when the cause of action arose and the benefits were not even created until after the insurance company went off the risk. A reason for my fundamental disagreement with the majority is because of the extreme burden it places on the insurer with a result so harsh that I think it could not be what Congress intended. This inequity can be illuminated by comparing the relative position of the prior insurer and the employer, or by comparing a prior and a subsequent insurer. Under the rule we lay down today, the prior insurer is left in a position so disadvantageous it cannot extricate itself. It is forced to pay claims for a new benefit, but cannot recover its loss by adjustment or charging of premiums. A subsequent insurer, however, either a new insurance company, or, as in the case at bar, the self-insuring company, does not face these problems. A new insurance company can adjust its premiums to compensate for the additional risk. The employer can pay the higher insurance premiums, look for another insurance company, or become a self-insurer.
 
 
 21
 Further, I think a central error in the majority opinion lies in its view of this case as an insurer versus an employer. This is demonstrated by the court's reliance on the following part of N., B. & C. Lines, supra, pointing out that (1) death benefits were allowed long prior to the 1972 amendment, and (2) such benefits could validly be increased. The majority fails to point out, however, that the insurance carrier in N., B. & C Lines was the insurer before and after the 1972 amendment and when the case came up on appeal. Obviously, in that setting the position of the employer and the insurer are the same. In the case at bar, however, the prior insurer's contract has long since terminated and the employer has become its own insurer. Thus, the employer and the insurance company described in N., B. & C. Lines are the same entity in the case before us, for Terminal's owner, Atlantic and Gulf Stevedoring, elected to be its own insurer. The majority's failure to recognize this crucial distinction has contributed, I think, to the erroneous result we reach today.
 
 
 22
 The simple economic truth is that someone has to pay for the cost of this new benefit, and I do not believe we should place this burden on an insurance company whose contract ended long before the new benefits were created, and which has never been, nor can ever be, paid for the risk it is forced to assume. Based on the predictable costs of the 1972 amendment, a subsequent insurer could adjust its premiums accordingly. The employer can pay the increased premium or insure itself and recoup by increased rates. Indeed, Atlantic has made that decision by becoming and remaining a self-insurer of Terminal. But the prior insurer has no such option; I do not believe Congress intended such a harsh result.
 
 
 
 [1]
 The amendment of § 909 became effective on November 26, 1972. 86 Stat. 1265
 
 
 [2]
 There were various other proceedings not germane to the issues presented by this appeal
 
 
 [3]
 For the procedure before the Benefits Review Board and on appeal by petitioner for review to the Court of Appeals, See Presley v. Tinsley Maintenance Service (5th Cir. 1976) 529 F.2d 433 at 435-436
 
 
 [4]
 539 F.2d at 381