The TRAVELERS INSURANCE
CO., Petitioner,

v.

Mrs. Mary MARSHALL, Director, Office of Workers' Compensation Programs, U. S. Department of Labor, Respondents.

No. 78–2387.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1981.

Strong, Pipkin, Nelson, Parker & Bissell, William B. Coffey, Jr., Kerwin B. Stone, Beaumont, Tex., for petitioner.

Carin A. Clauss, Sol. of Labor, Linda L. Carroll, Laurie M. Streeter, Joshua T. Gillelan, II, U. S. Dept. Of Labor, Washington, D. C., for respondents.

Before TJOFLAT, RUBIN and TATE, Circuit Judges.

TJOFLAT, Circuit Judge:

Travelers Insurance Company has filed this petition, pursuant to section 21 of the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. § 921 (1976), for review of a decision of the United States Department of Labor Benefits Review Board holding petitioner liable for certain death benefits authorized by section 9 of the Act. 33 U.S.C. § 909 (1976). We affirm the decision of the Board.

I

Neither party contests the facts underlying the Review Board's disputed order. On February 19, 1959, Van Marshall suffered a job related injury while employed by Looney's Sheet Metal Shop. Because of this injury, he received a compensation award for temporary total disability under the Longshoremen's and Harbor Workers' Compensation Act. During 1968 Van Marshall was found permanently totally disabled as a result of his 1959 injury; his award was appropriately modified. This permanent total disability continued until Van Marshall died on February 18, 1975, of causes *unrelated* to his 1959 injury.

At the date of Marshall's initial injury, Travelers Insurance Company provided Looney's Sheet Metal Shop with insurance coverage for Longshoremen's Act claims. The Act then provided for payment of death benefits to survivors of disabled maritime workers who had died as a result of the injuries giving rise to their disability. *See* 33 U.S.C. § 909 (1970). *See also State Insurance Fund v. Pesce*, 548 F.2d 1112, 1114 (2d Cir. 1977). This statutory provision was in effect in April of 1970, when Travelers ceased insuring Looney's Sheet Metal Shop.[1] In 1972 Congress passed a number of amendments to the Longshoremen's Act, one of which significantly expanded the availability of death benefits under section 909. This amendment is the central concern of this case; the pertinent language reads:

> If the injury causes death, or if the employee who sustains permanent total disability due to the injury thereafter dies *from causes other than the injury*, the compensation shall be known as a death benefit and shall be payable in the amount and to or for the benefit of the persons following ....

33 U.S.C. § 909 (1976) (emphasis added).

After Marshall's death, Mary Marshall, his widow, filed a claim for death benefits under section 909. Following a hearing, an administrative law judge issued an order awarding Mrs. Marshall death benefits under the 1972 amendment to section 909, and assigning liability for those benefits to Travelers Insurance Company. Travelers appealed this order to the Benefits Review Board, which affirmed the administrative law judge's decision. Record, vol. 1 at 1.

---

1. Houston General Insurance Company was Looney's Sheet Metal Shop's insurer at the time of Marshall's death. Record, vol. 1 at 2.

The company then petitioned for review in this court. 33 U.S.C. § 921(c) (1976).

## II

Travelers asserts that section 909 is constitutionally infirm, and thus that the Company may not be held liable for death benefits under the Act. In particular, Travelers argues that: Congress exceeded its authority to legislate on matters of admiralty by enacting this amendment to section 909, and thus the amendment is void; the 1972 amendment to section 909 is impermissibly retroactive;[2] and, even if otherwise constitutional, the amendment to section 909 is constitutionally intolerable as applied to petitioner. We find these arguments unpersuasive and affirm the Board's decision.

## III

### A

■ Petitioner first contends that Congress exceeded its authority to legislate on admiralty matters by enacting the 1972 amendment to section 909. As petitioner sees it, the amendment's provision of benefits for death causally unrelated to a maritime injury has an insufficient nexus with maritime concerns.

As an initial aside we must emphasize that the Longshoremen's and Harbor Workers' Compensation Act is constitutional beyond peradventure. *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). This is indicative of the broad power Congress has to legislate on admiralty matters. Furthermore, it is evident that

> The authority of the Congress to enact legislation of this [maritime] nature [is] not limited by previous decisions as to the extent of the admiralty jurisdiction. We have had abundant reason to realize that our experience and new conditions give rise to new conceptions of maritime concerns. These may require that former criteria of jurisdiction be abandoned as, for example, they were abandoned in discarding the doctrine that the admiralty

jurisdiction was limited to tidewaters. *The Genesee Chief*, 12 How. 443, 13 L.Ed. 1058, overruling *The Thomas Jefferson*, 10 Wheat. 428, 6 L.Ed. 358.

*Detroit Trust Co. v. The Thomas Barlum*, 293 U.S. 21, 52, 55 S.Ct. 31, 41–42, 79 L.Ed. 176 (1934).

It is thus clear that the Congressional admiralty power "permits of the exercise of a wide discretion," *Panama R. R. v. Johnson*, 264 U.S. 375, 386, 44 S.Ct. 391, 394, 68 L.Ed. 748 (1924); we believe that discretion was reasonably exercised in passage of the 1972 amendment to section 909.

Section 909 provides death benefits to the survivors of maritime workers who, during the course of maritime employment, suffered permanently totally disabling injuries. The maritime injury "is the pivot of the statute," *Crowell v. Bemon*, 285 U.S. 22, 56, 52 S.Ct. 285, 294, 76 L.Ed. 598 (1932); thus, "[t]he maritime nexus is obvious." *Todd Shipyards Corp. v. Witthuhn*, 596 F.2d 899, 904 (9th Cir. 1979). Therefore, the death benefit scheme of section 909 is clearly in furtherance of the purpose of the Longshoremen's Act, and is both maritime in nature and a proper subject for Congressional legislation. *Norfolk, Baltimore & Carolina Lines, Inc. v. Director, Office of Workers' Compensation Programs*, 539 F.2d 378, 380 (4th Cir. 1976), *cert. denied*, 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977). *See also Puig v. Standard Dredging Corp.*, 599 F.2d 467, 470–71 (1st Cir. 1979).

### B

Petitioner next contends that the amendment to section 909 is impermissibly retrospective. This argument is comprised of a basic contention and two corollaries. First, by altering the pre–existing relation between Travelers and the beneficiaries under its insurance coverage of Looney's Sheet Metal Shop, the Act is retrospective in effect. Travelers argues that acceptance of this proposition leads to two conclusions: retrospective application of the law, that is,

---

**2.** Amicus Curiae has joined Travelers in this argument. *See* Brief for Amicus Curiae, On Behalf of The West Gulf Maritime Association, at 6.

allowance of death benefits for those injured pre–amendment, and assignment of liability therefor to the insurer on the risk at the time of injury, is improper because the statute does not mandate that it should be so applied; and, the retrospective scheme of the Act is a denial of due process.[3]

The question of whether the 1972 amendment to section 909 constitutes a retroactive statute is a difficult one. It is clear that prior to the amendment, Travelers had contracted to provide benefits based upon deaths causally related to a permanent, totally disabling maritime injury. The 1972 amendment, however, provided that death benefits were to be paid to the survivors of those deceased workers who, whatever the cause of death, suffered from a maritime–related permanent total disability at the time of death. As applied to Travelers, therefore, the statute seems to have the effect of looking back to an insurance transaction and substituting a new, distinct term of coverage. To the claimant under the policy, however, the cause of action for death benefits based on a post–amendment death clearly arises after the passage of the 1972 amendment, and thus the statute also appears prospective. *See Hampton Roads Stevedoring Corp. v. O'Hearne*, 184 F.2d 76, 79–80 (4th Cir. 1950). Several federal circuit courts have addressed this perspectival clash. For example, *compare Puig v. Standard Dredging Corp.*, 599 F.2d 467, 469–70 (1st Cir. 1979) (right to section 909 death benefits arises at death; therefore, if death post–amendment, Act not retroactive) *with Norfolk, Baltimore & Carolina Lines, Inc. v. Director, Office of Workers' Compensation Programs*, 539 F.2d 378, 380 (4th Cir. 1976), *cert. denied*, 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977) ("Appellants' claim [of retroactivity], nevertheless, is quite understandable, for as a practical matter there is a death benefit post–1972 which was not there in previous years."). We agree with the approach of the fourth circuit, however, that "resolution of this conflict of views is not required," *Norfolk, supra*, 539 F.2d at

380, for a judicially sound disposition of this appeal. Whether or not the operation of the statute is properly deemed retrospective, the petitioner's contentions do not undermine its validity.

■ Although not favored, retrospective statutes are not *per se* unconstitutional. *Stephens v. Cherokee Nation*, 174 U.S. 445, 477–78, 19 S.Ct. 722, 734, 43 L.Ed. 1041 (1899); *Blount v. Windley*, 95 U.S. 173, 180, 24 L.Ed. 424 (1877). Therefore, whether section 909 was meant to be applied, as it was here, to assign death benefit liability for a post–amendment death to an insurance company providing coverage at the time of a disabling pre–amendment injury, becomes first a matter of statutory construction, and only later a matter for constitutional scrutiny.

The language of section 909 makes it clear that, while a cause of action for death benefits certainly does not arise until death, death is not the only operative fact relevant to a determination of the availability of Longshoremen's death benefits. Rather, the entire benefit scheme of the Longshoremen's Act is tied to the existence of a maritime related injury. Death benefits are not available under section 909 unless "the [maritime] injury causes death, or . . . the employee who sustains permanent total disability due to the [maritime] injury thereafter dies from causes other than the injury . . . ." "It is inaccurate, therefore, to state that the right to the death benefits has its origin solely in the event of death; the real source of the liability for such benefits under the Act traces directly back to the injury itself." *Pennsylvania National Mutual Casualty Insurance Co. v. Spence*, 591 F.2d 985, 987 (4th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979).

Thus, in interpreting this statute, we see an inevitable linkage between the event of maritime injury and the claim for death benefits. That linkage makes it apparent that Congress intended liability for death

---

**3.** The final point of argument is urged by Amicus Curiae. *See* Brief for Amicus Curiae, On Behalf of The West Gulf Maritime Association, at 10–14.

benefits to attach to the insurance carrier covering an employer's Longshoremen's Act claims at the time of a deceased's maritime injury. Congress clearly wished someone to bear the burden of enhanced death benefits. Given the distinct linkage between initial injury and a claim for death benefits, we believe it unreasonable to assume that an insurer coming on the risk after a longshoreman's disabling injury should bear the loss. Logic compels that between the initial insurer and the employer, the two parties in positions of responsibility at the time of a disabling injury, liability must be assigned to further the purpose of the Act. It is inappropriate to assume that Congress simultaneously wished to provide for enhanced benefits, yet saw fit to assign liability therefor to those incapable of providing their own risk insurance. The logical desirability of this allocation of burden based upon linkage with the initial injury and the purpose of the Act is bolstered by 33 U.S.C. § 935 (1976), which provides that an insurance carrier may assume an employer's liability under the Longshoreman's Act, but by so doing effectively steps into the shoes of the employer. Thus, just as the employer at the time of the permanently totally disabling injury would remain liable for claims arising from that injury, so too would an insurer standing in the employer's shoes as of the same date. *See Pennsylvania National Mutual Casualty Insurance Co. v. Spence*, 591 F.2d 985, 987 (4th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 373 (1979). Such an interpretation requires assignment of liability to the carrier providing coverage at the time of the relevant injury.

Furthermore, the legislative history of the Act indicates that section 909 is meant to apply to workers who, although dying of injury–unrelated causes post–amendment, had suffered the requisite maritime injury pre–amendment. The alternative to this construction would limit section 909's application to workers suffering both injury and death after the amendment.

A representative of the maritime industry did urge both houses to adopt a generalized amendment which would have had that effect. *See Hearings before the Sub–Committee on Labor of the Committee on Labor and Public Welfare, U. S. Senate, 92d Cong., 2d Sess. on S. 2318, S. 525 and S. 1547* at 314, 360 (1972); *Hearings before the Select Subcomm. on Labor of the Comm. on Education and Labor, House of Representatives, 92d Cong., 2d Sess. on H.R. 247, H.R. 3505, H.R. 12006, and H.R. 15023* at 115, 131–32 (1972). (Testimony of Edward D. Vickery.) Congress, however, did not do so. *Todd Shipyards Corp. v. Witthuhn*, 596 F.2d 899, 901 (9th Cir. 1979).

We agree with the ninth circuit that "[w]here Congress meant to restrict the applicability of a particular provision of the 1972 Amendments, ... it expressed its intentions through carefully constructed legislative history." *Witthuhn, supra*, 596 F.2d at 901. Thus, in the absence of specifically restrictive legislative history, we must construe the statute according to its logical command and the apparent intent of Congress and hold those insurers on the risk at the time of injury liable for section 909 death benefit claims linked to a pre–amendment injury. *See Nacirema Operating Co. v. Lynn*, 577 F.2d 852, 853–54 (3d Cir. 1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979).

■ We find, therefore, that section 909 must be construed to apply to both post–amendment deaths linked to pre–amendment injuries, and to insurers providing coverage at the time of injury. We do not decide whether this application of the statute mandates a declaration that it is retrospective; nevertheless, hypothesizing retroactivity, we must now determine whether application of the statute to assign liability to insurance carriers covering an employer at the time of the relevant injury is a violation of due process. We believe that *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) requires a finding that it is not.

*Turner* dealt with the constitutionality of various admittedly retrospective provisions of the Black Lung Benefits Act of 1972.

*See* 30 U.S.C. §§ 901–945 (1976). Relevant to our case is the dispute that centered around section 411(c)(3) of the Act, 30 U.S.C. § 921(c)(3) (1976). That section provides that miners who died with, but not necessarily from Black Lung (pneumoconiosis), would, for death benefit purposes, be presumed to have died as a result of Black Lung. "The effect of [this presumption] ... is to grant benefits to the survivors of any miner who during his lifetime had complicated pneumoconiosis arising out of employment in the mines, regardless of whether the miner's death was caused by pneumoconiosis." *Turner, supra* at 24, 96 S.Ct. at 2896. The parallel to section 909, which provides for death benefits to survivors of any worker permanently totally disabled as a result of a maritime injury, whether or not death was casually related to that injury, is palpable.

In rejecting a due process attack on this provision, the court first outlined the standard employed in determining the constitutionality of a retrospective statute. Given our hypothesis of retroactivity, that standard is controlling here.

> It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.... And this Court long ago upheld against due process attack the competence of Congress to allocate the interlocking economic rights and duties of employers and employees upon workmen's compensation principles analogous to those enacted here, regardless of contravening arrangements between employer and employee....
>
> .    .    .    .    .    .
>
> [O]ur cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.... This is true even though the effect of the legislation is to impose a new duty or liability based on past acts....

It does not follow, however, that what Congress can legislate prospectively it can legislate retrospectively. The retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former.

*Turner, supra* at 15–17, 96 S.Ct. at 2892–93.

Despite this heightened level of scrutiny, the Court found the Black Lung provisions constitutional as a rational method of allocating the cost of employee hardship, deemed a cost of business, to the employer. *Id.* at 24–25, 96 S.Ct. at 2897. The Court recognized, however, that in the particular case of assigning death benefit liability to a mine operator based upon a Black Lung–unrelated death, the "allocation of a cost of business" rationale did not initially appear apposite. *Id.* Nevertheless, the Court upheld that death benefits provision as a form of compensation for *injury* attributable to employment in the coal mining industry.

> We think it clear, however, that the benefits authorized by § 411(c)(3)'s presumption of death due to pneumoconiosis were intended not simply as compensation for damages due to the miner's *death*, but as deferred compensation for injury suffered during the miner's lifetime as a result of his illness itself ....
>
> [I]n the case of a miner who died with, but not from, pneumoconiosis *after* the Act was passed, the benefits serve an additional purpose: The miner's knowledge that his dependent survivors would receive benefits serves to compensate him for the suffering he endures. In short, § 411(c)(3)'s presumption of death due to pneumoconiosis authorizes compensation for injury attributable to the operator's business ....

*Id.* at 25, 96 S.Ct. at 2897.

In like manner, it is proper for us to view section 909's death benefits provision as providing for deferred compensation attributable to the suffering accompanying the necessary precondition of a permanently totally disabling maritime injury. As such, it

is a rational method for achieving Congress' goal of compensating those injured in maritime employment; assignment of liability to an insurer responsible for Longshoremen's Acts claims at the time of the triggering injury is also, by way of that linkage, rational. On the basis of *Turner*, therefore, we find that section 909 does not violate the due process clause. We are further supported in our finding by the opinions of five other circuits which have had occasion to uphold section 909 in the face of similar due process attacks. *See: Puig v. Standard Dredging Corp.*, 599 F.2d 467 (1st Cir. 1979); *Todd Shipyards Corp. v. Witthuhn*, 596 F.2d 899 (9th Cir. 1979); *Nacirema Operating Co. v. Lynn*, 577 F.2d 852 (3d Cir. 1978) *cert. denied*, 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979); *State Insurance Fund v. Pesce*, 548 F.2d 1112 (2d Cir. 1977); and *Norfolk, Baltimore & Carolina Lines, Inc. v. Director, Office of Workers Compensation Programs*, 539 F.2d 378 (4th Cir. 1976) *cert. denied* 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977). *See also: Pennsylvania National Mutual Casualty Insurance Co. v. Spence*, 591 F.2d 985 (4th Cir.) *cert. denied* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 373 (1979). *See analogously: St. Louis Shipbuilding and Steel Co. v. Casteel*, 583 F.2d 876 (8th Cir. 1978) (33 U.S.C. § 908 (1976) withstands constitutional scrutiny).

### C

Petitioner finally contends that, as applied in these particular circumstances, section 909 cannot pass constitutional muster. Petitioner argues that the amendment to section 909 created an entirely new, unforeseeable basis for insurance recovery, causing it economic injury that could not be mitigated by re–arranging its business affairs. When Marshall was found totally permanently disabled, the possibility arose that his death might be caused by that disability. Thus, Travelers faced the actuarially assessable *possibility* of paying his death benefits. Travelers had been able to arrange for premiums adequate to cover this risk and supposedly did so. In 1970, Travelers ceased insuring Looney's Sheet Metal Shop. In 1972 Congress passed the

amendment to 909 contested here. That amendment transformed a *possibility* of Traveler's death benefit liability into a *certainty*. Travelers, however, was no longer in a position to adjust Looney's premiums to account for this new liability. Thus, if section 909 is successfully applied to it here, the Company will suffer a loss without hope of recoupment through business adjustment vis–a–vis Looney's. This, petitioner asserts, is so egregiously unfair as to be a deprivation of due process.

Our inquiry here is necessarily conducted on a case–by–case basis. *See Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). We acknowledge the possibility that, in a properly developed case, a party may be able to demonstrate that the specific impact of section 909 on its activities is irrational or manifestly unjust. *See Turner, supra*, 428 U.S. at 45 n.9, 96 S.Ct. at 2906 n.9 (1976) (Powell, J., concurring in part and concurring in the judgment in part).

It is clear that section 909 has achieved some alteration in the economic rights of the private parties before this court. It is also clear that this alteration was legislated to further the national purpose of compensating injured maritime workers. We must contrast the alleged injustice wrought by this readjustment of economic burdens with the degree of rationality attaching to the statute. Furthermore, we must approach this endeavor with the understanding that the petitioner bears the burden of persuasion and that our level of scrutiny is dictated by the less rigorous demands placed upon economic legislation. *See Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

█ Viewed in this light, although initially compelling, *see Pennsylvania National Mutual Casualty Insurance Co. v. Spence*, 591 F.2d 985, 988–990 (4th Cir.) (Widener, J., dissenting), *cert. denied*, 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 373 (1979), petitioner's argument must fail. The core of petitioner's contention is that there has been an unreasonable incremental increase

in actuarial risk assigned to it; that it must now provide coverage for all deaths of disabled maritime workers rather than only for those dying as a result of maritime related disability. This enhanced risk, the Company argues, is manifestly unjust. The petitioner, however, has failed to build a factually precise record supporting this contention. The record does not reveal the resulting degree and actuarial cost of the enhanced risk petitioner must assume, and in the absence of this information we cannot conclude that the increment of hitherto unassumed risk newly assigned to petitioner is so egregious as to amount to a deprivation of due process. Petitioner cannot be successful here by merely relying on the seeming facial unfairness of section 909, as a perception of unfairness alone is not enough to require the striking down of a statute on due process grounds. *See Williamson, supra*, 348 U.S. at 488, 75 S.Ct. at 464. Something more egregious must be shown before petitioner can successfully carry the heavy burden of overcoming the strong presumption of constitutionality attaching to remedial social and economic enactments. *See Turner, supra*, 428 U.S. at 44–45, 96 S.Ct. at 2906 (Powell, J., concurring in part and concurring in the judgment in part). "[I]n the absence of appropriate factual support . . . to override the presumption of constitutionality," *id.* at 45, 96 S.Ct. at 2906 (Powell, J., concurring in part and concurring in the judgment in part), we must uphold the application of section 909 in this case.

The decision of the Benefits Review Board is, therefore, AFFIRMED.